THE GALENA, DUNLEITH AND MINNESOTA PACKET COMPANY, Appellant, *v.* JACOB VANDERGRIFT *et al.*, Respondents.

*Negligence—Collision.*—In action for damages arising from a collision of boats, if the negligence of both parties contributed to the accident, there can be no recovery.

*Appeal from St. Louis Court of Common Pleas.*

The following instructions, asked for by appellants, were given:

1. If the jury find from the evidence that, by the customs of the upper Mississippi river navigation in regard to steamboats, at the time of collision the Royal Arch was in a place where she was entitled to run as an ascending vessel, and that she was on the eastern side of the channel that runs down on the Iowa side when the Empire City came in sight; that the pilot of the Royal Arch signalled for the starboard at a proper distance, and continued her course on the eastern side of said channel according to her signal, leaving the whole of the main channel of the river on her larboard for the Empire City to run in; that the Royal Arch ran slowly up stream, close to the upper bar on the Illinois side, passing the towhead, and going off to the right towards the Illinois shore; and if the jury find from the evidence that the Empire City was descending the river, and was not in her proper place as a descending vessel immediately before and at the time of collision, and that the exercise of reasonable skill on the part of the pilot and officers of the Empire City in regard to keeping her in the channel, or in regard to obeying or giving the signals, would have avoided the collision; and that no act was done by the pilots or officers of the Royal Arch to mislead the pilot or officers of the Empire City, or to produce the collision, and no reasonable precaution omitted to avoid it, then the jury is authorized to find for the plaintiffs and to assess its damages at the amount it cost to raise and repair the Royal Arch, with interest thereon from the time of suit brought.

2. If the jury find from the evidence that the printed rules

of October 29, 1852, were in force as rules of navigation in May, 1856, then, so far as they are applicable to the circumstances of the collision, the position of the vessels, the giving of signals, the place where either vessel ought to run, and the manner in which their engines should be worked, they were and are binding upon the pilot and officers of the Empire City and Royal Arch; and if the jury believe from the evidence that, by the said rules of navigation, the Royal Arch, at the time of collision, was in the place she was entitled to be in as an ascending vessel; that she blew one blast of her whistle for the starboard at a proper distance from the Empire City, and run under slow bells up stream according to her signal, and that she was on the eastern side of, and out of, the main channel on the Iowa side, immediately before or at the time of collision; and if the jury further find from the evidence that, by said rules of navigation, the Empire City was not in her proper place as a descending vessel immediately before and at the time of collision, and that the exercise of reasonable skill on the part of the pilot and officers of the Empire City would have avoided the collision, and that no act was done by the pilot or officers of the Royal Arch to mislead the pilot or officers of the Empire City, or to produce the collision, and that the pilot and officers of the Royal Arch exercised reasonable skill on their part to avoid the collision, then the jury is directed that they should find a verdict for the plaintiff, and assess the damages at the amount it cost to raise and repair the Royal Arch, with interest thereon at six per cent. per annum from the time of suit brought.

3. If the jury find from the evidence that the pilot of the Royal Arch made a signal, at a proper distance below the Empire City, for the starboard, and heard only one signal from the Empire City in answer for the starboard, and at the time of said signal being given and answered the Royal Arch was on the eastern side of the channel running down the Iowa side, then the pilot of the Royal Arch was entitled to run his boat on the said eastern side of the channel by the rules of

navigation adopted October 29, 1852, and to keep to the right of said channel going up stream, and the said pilot of the Royal Arch did not have any right to cross the said channel to the Iowa shore after making said signal. If the jury find from the evidence that the Empire City, coming down, was so near that it would be possible for a collision to ensue therefrom; and if the jury should find from the evidence that the Royal Arch was not stopped and backed in proper time; yet if the jury further find that the failure of the Royal Arch to stop and back did not contribute substantially to produce the collision, and that the collision was substantially occasioned by the Empire City leaving the channel, and running out of it in the direction of the Royal Arch, and that the Royal Arch was in her proper place at the time of the collision for an ascending vessel, then the jury will find a verdict for plaintiff.

6. If the jury should believe from the evidence that the pilot or officers of the Royal Arch were in fault in any respect, and that such fault did not substantially tend to produce the collision, and that the collision was substantially produced by the fault, negligence or misconduct of the pilot or officers of the Empire City, then the jury should find for the plaintiff.

7. If the jury find from the evidence that, by the customs and rules of the navigation of the upper Mississippi river at the time of the collision, the Royal Arch was in the proper place for an ascending vessel, and that at the time of collision the Empire City was not in her proper place as a descending vessel, and that the exercise of reasonable care and skill on the part of the pilot and officers of the Empire City would have avoided the collision, and that no act was done by the pilot or officers of the Royal Arch to mislead the pilot or officers of the Empire City, or to produce the collision, and that the pilot and officers of the Royal Arch exercised reasonable skill and precaution on their part to avoid the collision, then the jury are authorized to find for plaintiff.

8. If the jury find from the evidence that, at the time of collision, the Empire City was loaded in a negligent, unskil-

ful or improper manner, and that, by reason thereof, she could not be handled and managed by her pilot with the same ease and facility as if she had been properly loaded; and that, but for that fact, the collision *might*, with the exercise of reasonable skill and care, have been avoided; and the fact of her being so negligently, unskilfully or improperly loaded contributed directly and substantially to produce the collision and sinking of the Royal Arch; and that the Empire City was not in her proper place as a descending vessel; and that there was reasonable care and skill used on the part of the pilot and officers of the Royal Arch to avoid collision; and that the Royal Arch was in a place where she was entitled, by the rules of navigation, to run, when the collision happened, then the jury is instructed to find a verdict for the plaintiff, and assess the damages at the amount it cost to raise the Royal Arch, with interest thereon from the time of suit brought.

The following instructions were asked for by defendants, (respondents,) and given by the court, viz:

\* \* \* \* \* \* \* \* \* \*

2. If the jury believe that the Royal Arch was in an improper place in the river for an ascending boat, and the persons in charge thereof saw the Empire City descending in the direction of the Royal Arch in time to prevent collision, and failed and neglected to use all reasonable and proper care and skill to prevent such collision, and by such failure the collision and damage complained of were caused, or materially contributed to, then plaintiff cannot recover, although there may have been fault or want of care of those in charge of the Empire City.

3. If the jury believe from the evidence that the collision and injury were caused by the negligence or unskilfulness, or by mismanagement or other fault of the persons in charge of the Royal Arch; or if such negligence or unskilfulness contributed substantially to cause such injury, then they should find for defendants, even though they may believe there was negligence or unskilfulness or other fault on the part of those in charge of the Empire City.

4. If both parties were in fault, and the fault of each contributed substantially to cause said injury, then the jury should find for the defendants.

5. Although the jury should believe that the Empire City was in an improper place in the river at the time of the collision, yet if, notwithstanding this, the collision could have been avoided by ordinary care and skill on the part of those in charge of the Royal Arch, then the fact of the Empire City being out of its proper place will not make defendants liable.

6. The jury is to determine as to the credibility of the witnesses, and should give to the evidence of each just such weight as they may think it entitled to; and if they believe any witnesses in the cause have wilfully sworn falsely as to any matter, they may disregard all their evidence.

The court gave the following instructions on its own motion:

1. When the Empire City and Royal Arch were approaching each other, so that a collision became possible or probable, it was the duty of the persons in charge of both boats to use all reasonable, proper and usual means, and diligently to exercise at least the skill ordinarily possessed by persons engaged in the navigation of that part of the river where the collision took place, to prevent it; and if, when the boats were so approaching each other, and in danger of collision, it was, under the actual circumstances of the case, the prudent and proper means to prevent a collision to check their headway, or to stop and back, it was their duty to do so if their position in reference to the towhead and other surrounding circumstances allowed it to be done; and this was their duty whether they were both in their right place in the river, or both in the wrong place, or whether one was in the right place and the other in the wrong. If, therefore, the Royal Arch was in a position to check her headway, or to stop and back when it was her duty to do so, as above supposed, and she failed to do so, and such failure caused or substantially contributed to the injury, the jury should find for defendants.

2. If the jury believe that the act entitled "An act to pro-

vide for the incorporation of transportation companies," read in evidence, was a law of the State of Illinois before and on the 13th day of December, 1855; and if, on that day, the secretary of State of that State made and issued the certificate of that date, read in evidence, then the said certificate is sufficient evidence that the plaintiff is, and was from that date, a corporation.

3. To find for the plaintiff, the jury must, of course, find that the plaintiff was a corporation, and that the Royal Arch belonged to it at the time of the collision.

*Hill & Grover*, for appellants.

The instruction of the court assumes that it was possible to back the plaintiff's boat out of the way, and perhaps escape; and if so, that the jury may acquit the defendants because plaintiff did not succeed in escaping by backing. This is not the law; plaintiff had done all that the rules of navigation required, and all that appeared to be practicable to escape from the collision. The failure of plaintiff's pilots to escape is not the proximate or even the remote cause of the collision, which resulted from defendant's boat being run out of the channel into plaintiff's vessel, in violation of every rule and law of navigation. By the rules of navigation, and the customs of the river, the running down of plaintiff's boat was inexcusable—even criminal.

I. It is a universal rule of navigation that the boat coming down must keep the channel, so as to be in the strongest current for speed, and in the place allotted to her by law. (Rodgers v. McCune, 19 Mo. 563.) This custom is ancient, and has been in force forty years.

II. It is a universal rule of navigation that the boat going up shall keep out of the channel at the shore, or the upper bar, so as to avoid the strong current, and obey the law, and leave the channel free for the down boat. (Rodgers v. McCune, 19 Mo. 563.)

III. *Causa proxima non remota spectetur.* The proximate cause of this collision was not the failure of plaintiff's vessel

to stop her engines and back out of the way in which she was going, and had a right to go. The proximate cause, and which alone can be considered, and to which only the court below should have directed the attention of the jury, was the sudden and unlawful sheer made by defendant's boat at so short a time before the actual collision that the Royal Arch could not have escaped, however much she may have tried; and whether any plan of escape may now be conceived of or imagined, can, in the nature of the case, form no bar to the recovery. (Tuff v. Warman, 94 Com. Bench, vol. 5, N. S., 573; Adams v. Wiggins Ferry Co., 27 Mo. 98.)

*F. C. Sharp,* for respondents.

I. It will be seen that by the instructions given for appellant and respondents, and by the court of its own motion, that the law governing the case was very fully given to the jury. The question for the jury was whether the collision was caused by the carelessness or want of skill of the persons in charge of respondents' boat; if it was, then whether the persons in charge of appellant's boat were guilty of carelessness or want of skill also, causing or materially contributing to the collision, or whether the collision was an accident not caused by carelessness or want of skill of either party.

If the collision was caused "by the fault, wholly or partially, of those in charge of appellant's boat, plaintiff could not recover." If those in charge of both boats were in fault, neither could recover. If neither were in fault, and the collision was the result of mere accident, the plaintiff could not recover. (Ang. on Car., § 556, and following; *id.*, § 636, and following; Sedg. on Dam., s. p. 469-70, being p. 494 of 3d ed.; St. Bt. Western Belle v. Wagner, 11 Mo. 30.)

II. As to the law as laid down by the Common Pleas Court, and also deciding that a steamboat is not liable for a collision or damage done by it from the mere fact that it is running, at the time, out of the channel in an improper place in the river, but there must be some negligence or fault of the of-

ficers or persons in charge of it shown to render it liable. (See Adams v. Wiggins Ferry Co., 27 Mo. 95.)

BATES, Judge, delivered the opinion of the court.

The plaintiff was the owner of a steamboat called the Royal Arch, and the defendants were the owners of another boat called the Empire City. These boats, while running in the Mississippi river, (the Empire City descending and the Royal Arch ascending,) came in collision, by which the Royal Arch was sunk. The plaintiff brought this suit to recover the damage sustained by them, charging that the loss was occasioned by the carelessness, negligence and want of skill of the agents and servants of the defendants, then in charge of the Empire City.

The defendants put in issue these allegations. There was a full trial and verdict, and judgment for the defendants, from which the plaintiff appealed to this court.

At the trial, a great deal of evidence was given as to the facts occurring at and immediately before the time of the collision, and as to the rules of navigation and the customs and usages of boats in meeting and passing each other. There was, as to some matters, great conflict in the testimony.

Six instructions were given to the jury for the plaintiff, and six for the defendants, and three by the court without the motion of either party.

Taken as a whole, the instructions were so voluminous that they may well have confused the jury; but the plaintiff cannot complain of them for that reason, as the greater portion of the volume was given at its request. Taken as a whole, we find, upon careful examination, no other serious objection to them. The only specific objection seriously made to any of them is to the first instruction given by the court. That objection is that too great prominence was given to the duty of the officers of the Royal Arch, when a collision became probable, to stop and back the boat.

If this instruction stood alone, the objection would probably be held valid; but the other instructions, especially those

given for the plaintiff, had pointed out and directed the attention of the jury to all the other duties of the officers of both boats at the time and under the circumstances of the case, and there was therefore no impropriety, but on the contrary a manifest propriety, in directing attention to the duty of stopping and backing, as was done in this instruction, when taken in connection with the instruction number three given at the instance of the plaintiff, having reference to the same subject.

We find no error in the record justifying a reversal.

Judgment affirmed.    Judges Bay and Dryden concur.