HOGAN et al., Appellants, v. CITIZENS' RAILWAY
COMPANY.

### Division One, May 23, 1899.

1. **Negligence**: FENDERS ON CARS: CAUSE OF ACTION. The simple averment of a failure on the part of a street railway "to use ordinary care in providing said grip car with a fender to prevent its running over the children it had run down and upon" does not state a cause of action for negligence. There must be either an averment that some statute or ordinance made it the duty of the company to place fenders on the cars, or if there is no such law then under the common law the company is required to use only such appliances as a man of ordinary prudence would use under the circumstances, and the mere absence of a fender did not imply that the car was not reasonably safe.

2. **Practice**: ADMISSION OF FORMER TESTIMONY. The plaintiff asked the conductor of defendant's train if he had not testified to certain facts in regard to the killing of their child before the coroner's jury, and he admitted that he had, and plaintiff then made no offer of that testimony, but the court permitted the defendant to read the whole of it, the plaintiffs objecting that it was irrelevant and immaterial, and after it was read they moved to strike it out. *Held*, that such testimony was improperly admitted, but as it was substantially the same as his testimony at the trial, the plaintiffs were not prejudiced by it and hence a new trial can not be awarded on that ground.

3. ————: MOTORMAN'S OPINION. The motorman was asked to "tell the jury what else there was that you could have done that you did not do, under the circumstances," and, over plaintiff's objection he replied: "There was nothing else that I could have done on the grip car." *Held*, that, as this was the mere opinion of an expert witness, and as what was done with respect to the negligence charged had been fully testified to on behalf of both parties, this testimony did not materially affect plaintiffs' case and hence the judgment can not be reversed on that ground.

4. ————: TAKING ISSUE FROM JURY: SPEED OF CARS. Where one act of negligence charged was that the cars were run at a greater rate of speed than was allowed by ordinance, and the uncontradicted testimony shows that they were at the time of the accident running at only half the speed permitted by ordinance at the point where the accident occurred, the court properly took that feature of the case from the jury.

5. **Comparative Negligence**: RECOVERY. Where both parties have been guilty of negligence, which directly contributed to cause the injury, there can be no recovery.

6. ———: CONTRIBUTORY NEGLIGENCE. The rule that the negligence of the plaintiff which contributed directly to the cause of the injury will prevent a recovery, is without exception or qualification.

7. ———: ———: MUTUAL. Where the negligence of the plaintiff directly contributed with that of the defendant to produce the injury, or if the negligence which produced the injury is mutual, plaintiff can not recover.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

CHAS. W. BATES, CHAS. P. JOHNSON and VIRGIL RULE for appellants.

(1) Plaintiff may charge in one count as many acts of negligence on the part of the defendant as he alleges caused the injury; and the lower court erred in striking from the petition the allegation that defendant was negligent in not providing the grip car with a fender. This error was repeated in the last instruction given on behalf of defendant. Hill v. Railroad, 49 Mo. App. 534, s. c. 121 Mo. 477; Senn v. Railroad, 135 Mo. 519; Seiter v. Bischoff, 63 Mo. App. 157; Elliott on Railroads, sec. 1157. (2) Where plaintiff has not offered in evidence for the purpose of contradicting defendant's witness any part of his testimony given on a former occasion, nor even identified the same, it is not proper to allow defendant to read the whole of such testimony regardless of the relevancy, and without any proof that the paper read from was a transcript of the testimony of such witness. Berthold v. O'Hara, 121 Mo. 97; State v. Fairlamb, 121 Mo. 153. (3) It is error to permit a witness, over objection, to answer a question calling for a conclusion which it is for the jury to decide in the case from the facts in evidence; and the objec-

tion of plaintiff to the gripman's answering the question, after he had related the facts of the happenings of the injury, if there was anything else he could have done which he did not do, should have been sustained. King v. Railroad, 98 Mo. 240; Hunt v. Railroad, 94 Mo. 260. (4) Independent of ordinance or statute, it is the duty of the gripman, in charge of cars operated on a public street, to be on the lookout for persons on the street, and to take all reasonable measures to avoid injuring persons who may be on the street. Winters v. Railroad, 99 Mo. 517; Senn v. Railroad, 108 Mo. 152; Reilly v. Railroad, 94 Mo. 609. (5) Whether the gripman exercised reasonable care under all the circumstances was a question of fact for the jury. Stanley v. Railroad, 114 Mo. 619. (6) It was for the jury to find from the facts in evidence whether, under all the circumstances, defendant was negligent in running the cars at the speed it did run them just before and at the time of the accident, and not for the court to declare that it was not negligent to run at the rate of six miles an hour. Railroad v. St. L. Union Stock Yards, 120 Mo. 558; Stepp v. Railroad, 85 Mo. 234. (7) It was error for the court to declare that "the jury must not impute any negligence to the gripman because he did not stop or try to stop, or was not running slowly before the rush of the crowd occurred," because it was for the jury to find from the evidence in the case whether under all the circumstances there was such an appearance of danger before the crowd rushed as to require the gripman in the exercise of duty to run slowly. (8) Whether it was negligence in the gripman to fail to ring his bell or give warning of the approach of the car after giving the usual signal before reaching a street, although no statute or ordinance so requires is a question of fact depending on the evidence, and it is error for the court to declare, as a matter of law, that such failure in this particular case was not negligence. Burger v. Railroad, 112 Mo. 246; Hodges v. Railroad, 71 Mo. 50; Loyd v. Railroad, 128 Mo. 595. (9) If,

notwithstanding contributory negligence of plaintiff or deceased, defendant could have by the exercise of ordinary care avoided the injury, then defendant is liable. The court erred in refusing the instruction on this point prayed by plaintiff. Fiedler v. Railroad, 107 Mo. 652; Loyd v. Railroad, 128 Mo. 608; Czezewzka v. Railroad, 121 Mo. 214; Rosenkranz v. Railroad, 108 Mo. 13.

SMITH P. GALT for respondent.

(1) The court did not err in striking from the petition the allegation, to wit: "And defendant did negligently fail to use ordinary care in providing said grip car with a fender to prevent its running over the children it had run down and upon." Taking it as appellants probably intended it, it is an immaterial and irrelevant allegation, unless it would further appear that such fenders were at the time of the accident in use in the city of St. Louis, or were required by city ordinances or the law of the State. It does not lie in the mouths of the plaintiffs or their counsel to imagine additional appliances, which defendant might have had, and make that a basis of recovery. (2) The court did not err in permitting defendant to read in evidence the whole of the conductor's testimony at the coroner's inquest, as part of its questions and answers had been read to the jury and he was examined thereon by appellants, for the purpose of contradicting his evidence at the trial. Wilkerson v. Eilers, 114 Mo. 245; State v. Talbott, 73 Mo. 258; Prewitt v. Martin, 59 Mo. 325; 1 Greenl. on Evid., sec. 462; Romertze v. Bank, 49 N. Y. 577. (3) The question asked the motorman did not call for a conclusion, as appellants urge, but for a fact. The jury might imagine, or counsel for appellants in argument might urge, there was something else besides what the motorman had testified to, that he had done to stop the car, that he might have done, and therefore, though the defendant might not be required to prove a negative and ran some risk in attempting

it, the inquiry was proper.    The witness was an expert, and the law presumes he would tell the truth.

MARSHALL, J.—Damages for death of plaintiff's child.

The plaintiffs as the father and mother of Floyd B. Hogan, sue the defendant, a corporation, operating a cable street railway in St. Louis, under section 4425, R. S. 1889, to recover five thousand dollars for the death of their minor child, a minor seven years of age, which occurred on the 5th of June, 1893, at the corner of Twelfth and Morgan streets, by being run over by one of defendant's trains of cars, which was composed of a grip car and a trailer.

The petition charges four acts of negligence by defendant:    1st, Running the cars at a greater rate of speed than is allowed under the city ordinances; 2d, Failure of the conductor and motorman to keep a vigilant watch for all persons on foot, especially children, either on the track or moving toward it, and after the gripman and conductor saw or by keeping a vigilant watch for children might have seen their child, failure to stop the train of cars in the shortest time and space possible, as the city ordinance requires; 3d, Failure "to ring the bell or give any signal or sufficient warning of the approach of the cars," although running in a thickly settled part of the city where the street was being constantly crossed by women and children and the public generally, and 4th, Failure "to use ordinary care in providing said grip car with a fender to prevent its running over the children it had run down and upon."

On motion the court struck out the fourth act of negligence pleaded, and the plaintiffs saved an exception to the ruling.

The answer admitted the incorporation and business of the defendant, and that the deceased came to his death from injuries received "by one of defendant's cars," but denied generally the other allegations of the petition.    Contributory negligence by the deceased and by his parents, the plaintiffs, was

affirmatively averred by the defendant.   A proper reply was filed.

The trial developed the facts following:

Plaintiffs offered in evidence ordinance No. 13,896, which ordinance gives the defendant the right to operate its line of railroad by cable, and providing by section 6 as follows: "The City of St. Louis reserves the right to regulate the running of cars, and the rate of speed at which cars shall be run on said railroad."   Ordinance No. 14,600, offered in evidence by plaintiffs, provides that defendant may run its cars on Morgan street from Garrison avenue to Fourth street at a rate of speed not exceeding eight and one-half miles an hour.

Plaintiff also offered in evidence Ordinance 17,188 which ordinance, so far as material to this case, is as follows:

"An ordinance in revision of the ordinances of the City of St. Louis, and to establish new ordinance provisions for the government of said city.

"Sec. 1274.   Every person, corporation, company or co-partnership engaged in the business of transporting passengers from any one point to any other point within this city, for hire, on street railways, shall be subject to all of the conditions, stipulations and requirements of this article."

"Sec. 1275.   The following rules and regulations concerning the running of street railway cars shall be binding upon every person, corporation, company or copartnership, taking out license under the provisions of this article."

Paragraph 4th:   "The conductor, motorman, gripman, or driver, or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving toward it, and on the first appearance of danger to such persons or vehicles, the cars shall be stopped in the shortest time and space possible."

Plaintiffs also offered in evidence an acceptance by the defendant of Ordinance 13,896, dated May 9th, 1887, but no express acceptance of ordinance 17,188 was shown.

Defendant's train was proceeding eastwardly on Morgan street. The day was clear and bright. A crowd of from fifty to a thousand people, according to the estimate of different witnesses, had gathered on the northeast corner of Twelfth and Morgan streets, in consequence of an arrest of a man and woman. There was a police signal box on the east side of 12th street, about twelve to twenty-five feet north of the building line of Morgan street, to which the policeman had carried the persons arrested, to signal for a police patrol wagon to take the prisoners to the lock-up, and the crowd had followed the policeman and his prisoners and were crowding around and upon them. There were only four or five persons on the sidewalk on the north side of Morgan street, but there was no one on the roadway of the street. There were no persons on the railroad track or approaching it. As the train approached the west side of 12th street, the gripman rang the bell twice, the usual signal on approaching a crossing, and then holding the brake lever in his right hand and the grip lever with his left hand, he slowed the train down from a speed of eight and a half miles an hour, its authorized speed under the ordinance at that point, to about half that speed. There is a conflict in the testimony as to whether he was looking ahead of the train, or was leaning towards the left looking up 12th street at the policeman, with his prisoners and the assembled crowd. In this way and at that speed he crossed 12th street, and when the train was within a few feet of the east side of 12th street, the policeman suddenly brandished his club, the crowd as suddenly rushed back into Morgan street, "all around the car," the gripman dropped the rope entirely and with both hands applied the brake and stopped the train as quickly as he could. But the deceased child had in the meantime run out into the roadway of Morgan street, with the surging crowd, and was struck by the front of the gripcar and knocked down, and when the car was stopped he was found under the forward end of the gripcar, resting against the lifeguard, a contrivance or "V"

shaped guard which was placed under the car in front of the fore wheels to keep them from running over any one that might be caught under the car. The wheels of the gripcar did not, in consequence of this life guard, run over the child. The gripman never saw the child at any time before the injury, and did not know the child was under the car until the crowd hallooed and the train was stopped. The plaintiff objected to certain testimony introduced by the defendant and admitted by the court, which will be considered hereinafter.

At the request of the plaintiffs the court instructed the jury as follows:

"The jurors are instructed that if they believe and find from the evidence that plaintiffs are the parents of Floyd B. Hogan, deceased, that said deceased, at the time of his death, was a minor, unmarried, and the age of seven years, and that defendant on and prior to about the 5th day of June, 1893, was engaged in the business of transporting passengers, for hire, from one point to another, within the city of St. Louis, by street railway and for that purpose used and operated its railway, and a certain gripcar and trailer composing the train; and,

"If the jurors further believe and find from the evidence that Morgan street, at said time, was an open public street of the city of St. Louis, at the place hereinafter mentioned; and,

"If the jurors further believe and find from the evidence that on the 5th day of June, 1893, said child was in said Morgan street, at a point at or near the crossing on the east side of Twelfth street, and whilst on said street, at said place, he was run over by defendant's said gripcar and thereby injured and died from the effect thereof; and,

"If the jurors further believe and find from the evidence that defendant's gripman in charge of said gripcar, just before and at the time of so running over and injuring said child, was not keeping a vigilant watch for all persons on foot, especially children, either on its said track or moving toward it, or that

said gripman did not stop said gripcar in the shortest time and space possible, under the circumstances, upon the first appearance of danger to said child; and,

"If the jurors further believe and find from the evidence that said gripman by the keeping of such vigilant watch, would have seen said child moving towards the track, or upon the track and in danger, and could, in the exercise of ordinary care, by so stopping said gripcar in the shortest time and space possible under the circumstances, have averted the injury from said child; and,

"If the jurors further believe and find from the evidence that plaintiffs exercised ordinary care in the custody of said child in keeping it from being exposed to said injury, according to their condition in life, and that said child exercised the degree of care which is reasonably to be expected from a child of his years and experience under the circumstances, then your verdict should be for the plaintiffs, and if you find for the plaintiffs, you will assess their damages in the sum of five thousand dollars.

"The jurors are instructed that if the defendant was engaged in the business of transporting passengers for hire, from one point to another, within the city of St. Louis, on or about the 5th day of June, 1893, then by ordinance No. 17,188, read in evidence, it became the duty of the gripman in charge of the gripcar to keep a vigilant watch for persons on foot, especially for children, either on its track or moving toward it, and on the first appearance of danger to such person or child, it was the duty of the gripman to stop the car in his charge in the shortest time and space possible under the circumstances.

"The court instructs the jury that the degree or measure of care or caution which said infant child, Floyd B. Hogan, was required to exercise, was that which is ordinarily exercised, and which is reasonably to be expected from a child of his years and experience, under the circumstances he

Hogan v. Citizens' Railway Co.

was in, as shown by the evidence, and before the jury can find him guilty of contributory negligence, they must find that he failed to exercise such care or caution as might reasonably be expected of a child of his years and experience under the circumstances, and the burden of proving contributory negligence is on the defendant, to be established by a preponderance of the evidence."

At the request of defendant the court gave the following instructions:

"The court instructs the jury that in considering this case they should not indulge in any mere suppositions or imaginings as to what may or may not have been done or occurred at the time of the occurrence, but must decide the case upon the evidence of the witnesses and the instruction of the court. And the court further instructs the jury that they are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, and in weighing the testimony the jury should take into consideration not only what they have testified to, but also their manner of testifying, and their bias, if any is shown, towards or against plaintiffs or defendant, their ability at the time to clearly see what occurred, and now to clearly recall and relate the facts, and if the jury believe from the evidence that any witness has knowingly sworn falsely to any material fact, then the jury may disbelieve the whole or any part of such witness' testimony.

"The court instructs the jury that, though there was a crowd of people at the northeast corner of Twelfth street, the gripman was not required, under the allegations of the petition and the law to slow down his train to one, two or three or four or five or six miles an hour, or to stop it, or try to stop it, before the rush of the people towards the track, and the jury must not impute any negligence to the gripman because he did not stop, or try to stop, or was not running very slowly, before the rush of the crowd occurred, or the first appearance of danger.

"The court instructs the jury that there is no evidence in this case tending to prove the cars were being run at a greater rate of speed than eight and one-half miles an hour, and therefore the jury should not consider the allegations of negligence that the train was being run at a greater rate of speed than eight and one-half miles an hour; and the court further instructs you that if you believe from the evidence that, as the train was approaching Twelfth street, the gripman rang the bell, and it could be heard at the northeast corner of Twelfth and Morgan streets, then the court instructs you that he performed his whole duty under the allegations of negligence in that regard and under the law, and he was not required to be ringing it as he was crossing Twelfth street and approaching the east crossing, and you must find that allegation of negligence concerning the not ringing of the bell in favor of the defendant; and the court further instructs you that all the evidence in this case shows that the child, Floyd B. Hogan, was on the pavement in the crowd, and if the jury believe from the evidence that the gripman and conductor were keeping a vigilant watch for all persons on foot, especially children, as mentioned in these instructions, as the train was crossing Twelfth street and approaching the east crossing, and that as soon as the crowd surged or rushed toward the track the gripman stopped the train in the shortest time and space possible under the circumstances, then your verdict must be for the defendant, notwithstanding the gripman did not notice the boy as he ran from the pavement and onto the track or thereafter.

"The court further instructs the jury that an accident may happen and a person be injured or killed therein, that is not caused by the negligence of any person connected therewith, and if the jury believe from the evidence that the death of the child, Floyd B. Hogan, was the result of such mere accident or misadventure then your verdict must be for the defendant.

"The court instructs the jury that while the child Floyd B. Hogan, was required to use only such care and caution as could be reasonably expected of a child of his years and experience, nevertheless, he was required to use such care and caution, and if the jury believe from the evidence that he did not do so, and was himself negligent in running right in front of and close to the car, and his being run upon by the car, was the result of his negligence, in not exercising such care, then the jury will find their verdict for the defendant.

"The court instructs the jury that under the pleadings and evidence, no want of care or negligence can be imputed to the defendant because it did not have other or different appliances about its gripcar, than it had, and therefore the jury must not consider that matter at all."

To the giving of each of said instructions plaintiffs duly excepted.

The court refused the following instruction prayed by plaintiffs, to which refusal plaintiffs duly excepted.

"The court instructs the jurors that though they may believe from the evidence that plaintiffs were guilty of negligence in permitting Floyd B. Hogan to be upon the street unattended at the time of the accident, yet, if you further believe and find from the evidence that defendant's servant in charge of said gripcar was guilty of negligence in the management of said car, as defined in these instructions, and that such negligence was the immediate cause of the death of deceased, and that by the exercise of ordinary care and precaution on the part of said servant or gripman, the death of said child might have been avoided, then you will find a verdict for the plaintiffs."

The jury returned a verdict for defendant, and plaintiffs' motion for a new trial being overruled, they perfected an appeal to this court.

## I.

Plaintiffs assign as error the ruling of the trial court in striking out from their petition the averment, "and defendant did negligently fail to use ordinary care in providing said gripcar with a fender to prevent its running over the children it had run down and upon." They here contend, that a plaintiff "may charge in one count as many acts of negligence on the part of the defendant as he alleges caused the injury . . . so long as the allegations are not inconsistent in fact with each other, i. e., so long as the allegations are of such a character that the proof of one would not disprove the other or another."

The law is as claimed by the plaintiffs, but this statement of a general legal proposition does not point out wherein the trial court erred in sustaining the motion to strike out. The court manifestly never proceeded upon the idea that the plaintiffs could not state in the same count as many acts of negligence as they saw fit, for the count contained three other claimed acts of negligence, after this allegation was stricken out. The ruling of the court was that the acts averred did not constitute negligence on the part of defendant, and hence should be eliminated from the case, and not because they were a sufficient charge of negligence that was improperly combined in the same count with other sufficient charges of negligence. In fact this was all that was claimed in the motion.

No claim is made here that there was any law of the State or any ordinance of the city which made it the duty of the defendant to place fenders on its cars. The obligation to do so, therefore, must be found in the common law, if there is any such obligation resting upon defendant. It is not claimed that the common law expressly imposed any such obligation, but it is claimed that, "defective appliances or no appliances at all or insufficient appliance is a question of negligence for the jury." The obligation of the common law is that the defendant shall exercise ordinary care to prevent injury to the

Hogan v. Citizens' Railway Co.

public. No particular kind of appliance is required to be used. It is only necessary that the defendant should have used such means to prevent injury to the public as a man of ordinary prudence would have used under the same circumstances. To predicate a charge of negligence upon a failure to use any particular kind of appliance is insufficient, especially in the absence of any averment that the appliances and means employed by defendant were not reasonably safe. As between master and servant the master is not required to furnish the best and safest known appliances. It is enough that what he does furnish are reasonably safe for the purposes for which they are intended and used. [Parker v. Railroad, 109 Mo. l. c. 407; Williams v. Railroad, 119 Mo. 316; Bender v. Railroad, 137 Mo. 240.] So with respect to its common law duty to the public, it is not whether there are known appliances which the defendant did not use, but whether the appliances it does use are such as a person of ordinary prudence would have used, which determines the question of its negligence. There was therefore no error in the ruling of the court sustaining the motion to strike out this allegation in the petition.

## II.

On the cross-examination of the conductor the plaintiff's attorney interrogated him as to certain answers made by him when examined by the coroner, and the witness admitted having testified as he was asked if he had done. The plaintiffs did not read or offer to read the testimony of the witness before the coroner. But the defendant offered to read the whole of the witness' testimony given before the coroner. Plaintiff's counsel then said: "He has got the witness' statement, there are lots of things that are irrelevant that were before the coroner, and I object." "The Court: You had a perfect right to read it all if you wanted to, and he has a

right to read it." "Mr. Rule: I did not offer it in evidence, I simply asked whether these questions were asked and answered." "The Court: He can read it all." The whole of the witness' testimony was then read to the jury. After it was read, plaintiff's counsel objected to the testimony because the copy was not "a certified copy of the inquest," and moved to strike out the testimony. The court held that the objection came too late. Plaintiffs saved their exceptions and now assign this ruling of the trial court, as error.

The questions propounded to the witness as to his testimony before the coroner had no tendency to contradict his testimony on the witness stand in this case. His testimony on both occasions was, in all material respects, the same. But there was no objection by defendant that there was any variance. The matter then was left by the plaintiffs in the shape of showing that on both occasions he had testified the same way and that he admitted that he had testified before the coroner as he was asked if he had done. In this condition of the case the plaintiffs did not offer his testimony before the coroner in evidence, and as it would not have contradicted anything he had testified to on the stand, it would not have been admissible in evidence. But for some reason which is by no means clear, the defendant offered the whole of his testimony before the coroner in evidence in this case, and over the objection of the plaintiffs the court admitted it. The colloquy between the court and counsel shows that the court admitted it upon the theory that the plaintiffs had introduced a part of the witness' testimony and hence the defendant had a right to have the whole of it go to the jury. This, however, was a mistake. The plaintiffs had not introduced any part of it. They had attempted to lay the foundation for its introduction, but the witness had admitted testifying before the coroner exactly as he was asked if he had done. Hence the plaintiffs necessarily had to abandon the attempt to contradict him in this way. No part of the testimony having been

introduced by plaintiffs there was no foundation of right in the defendant to introduce the whole of it.    It was therefore error for the court to admit it.    But it does not follow that the judgment must be reversed for this reason alone.    A careful reading of the testimony thus introduced shows that it is substantially the same as his testimony on the stand.    The plaintiffs were not in any way prejudiced by it.    It was simply a reiteration of his testimony on the stand.    Section 2303, R. S. 1889, provides:    "The supreme court, or court of appeals shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action," and it has been uniformly held by this court in construing this statutory provision that it must appear that the error had or might have had a probable effect on the jury.    [Gordon v. Eans, 97 Mo. l. c. 603; Valle v. Picton, 91 Mo. l. c. 215; Gray v. Packet Co., 64 Mo. 47; Kinealy v. Burd, 9 Mo. App. 359; Julian v. Calkins, 85 Mo. 202; State v. Kring, 74 Mo. 612.]    In the Kring case the evidence erroneously admitted related to a fact which was really conceded in the case, and in Julian v. Calkins, the testimony admitted was that of the surviving party to the cause of action, the other party being dead, and yet the judgment was not reversed for this error, because it appeared that other witnesses had testified to the same facts sworn to by the surviving party and they were not contradicted.    So in this case this error can not be said to have materially affected the merits of the action or to have prejudiced the plaintiffs rights, as what the witness was shown to have said before the coroner was substantially the same as he testified on the stand in this case.

### III.

On redirect examination of the motorman, after the witness had detailed all he had done, the defendant's counsel asked this question:    "Tell the jury what else there was that

you could have done that you did not do under the circumstances." Plaintiffs' counsel objected to the question on the ground that it was for the jury and not for the witness to decide. The court admitted the evidence, and the witness said: "There was nothing else that I could have done on the gripcar."

The witness was shown to be an experienced gripman. He was competent to give an opinion. At best it was an opinion which he gave. That opinion was not binding upon the jury. The jury was still at liberty to find that there was something else he could have done, and counsel was at liberty still to insist upon a recovery because of some act of negligence pleaded. The plaintiffs' right to recover was limited to the acts of negligence charged in the petition. There was no occasion for the defendant to attempt to prove a negative pregnant in this way. What had been done with respect to the negligence charged had been fully testified to on behalf of both parties, and no court would believe that this testimony would or could materially affect the plaintiff's case, and hence the judgment should not be reversed for this reason alone.

## IV.

The first act of negligence charged in the petition is that the cars were run at a greater rate of speed than is allowed under the city ordinance. The ordinance allowed the cars to be run at the rate of eight and one-half miles an hour at the point where the accident happened. The uncontradicted testimony shows that they were running at only half speed at that time. This averment of the petition was therefore not sustained by the testimony, but actually disproved, and the court properly took this feature of the case from the jury. The plaintiffs predicated a right of recovery in respect to the speed of the car, on a violation of the ordinance provision, and having failed to prove their averment can not now be heard to rely upon common law negligence in running the car at

too great a rate of speed under the circumstances of the case. No such issue was tendered or joined in this case, and the plaintiffs' right to recover for this reason was expressly made to depend upon a violation of the ordinance regulation.

## V.

The second alleged act of negligence is that the conductor and gripman did not keep a vigilant watch for persons, especially children, upon or moving towards the track, and did not stop the car in the shortest time and space possible after he saw or could have seen the danger to the plaintiffs' child.

This was a question of fact for the jury. There was a conflict in the testimony. The circumstances and physical facts strongly supported the testimony of the defendant's witnesses and the jury found in its favor. There is no conflict in the testimony that there appeared to be no danger until the car got within a few feet of the place where the accident occurred. Prior to that time there was no person on the roadway of Morgan street, and only four or five persons on the sidewalk on the north side of that street. The crowd was on 12th street, north of the building line on the north side of Morgan street. They were pressing around the policeman and his prisoners. The policeman brandished his club and the crowd suddenly surged or rushed into the roadway of Morgan street, surrounding the car. The gripman at once stopped his car. He never saw the child at all, and did not know he was under the car until it was stopped. No serious objection is or can be urged to the manner in which the court instructed the jury on this proposition. Under these circumstances, the judgment below can not be disturbed here.

## VI.

The third alleged act of negligence is a failure to ring the bell or to give any signal or sufficient warning of the approach of the train.

This also presented an issue of fact. Plaintiffs' witnesses testified that they did not hear any bell, but admitted that they were not paying any attention to whether a bell was ringing or not. Defendant's witnesses testified that the bell was rung twice, which was the usual signal at a street crossing, on approaching the west crossing of 12th street.

The plaintiffs asked no instruction whatever on this issue, and the court instructed the jury on defendant's request, that if the gripman rang the bell as the train was approaching 12th street they must find for defendant on this issue. The plaintiffs have nothing to complain of in this regard.

## VII.

The instructions given fairly put the case to the jury. The instruction asked by the plaintiffs and refused by the court, to the effect that even if the plaintiffs were negligent in permitting the child to be upon the street unattended, still if the gripman was guilty of negligence and his negligence was the immediate cause of the injury, and that by the exercise of ordinary care and precaution on the part of the gripman the injury might have been avoided, their verdict should be for the plaintiffs, was properly refused; first, because there was no evidence in the case upon which to predicate such an instruction; and, second, because it does not correctly state the law, in this, that it fails to express the idea that the gripman could have prevented the injury, "after discovery of the danger in which the injured party stood or failed to discover the danger through its own recklessness when the exercise of ordinary care would have discovered it and averted the calamity." [Fiedler v. Railroad, 107 Mo. l. c. 652, citing Dunkman v. Railroad, 95 Mo. 232, and Williams v. Railroad, 96 Mo. 275; Czezewzka v. Railroad, 121 Mo. l. c. 215; Lloyd v. Railroad, 128 Mo. l. c. 601.]

As drawn this instruction asserts the proposition, that where both parties have been guilty of negligence the jury

must find for the plaintiff, if the defendant's negligence was the immediate cause of the injury.   For so much of the instruction as says that the defendant is liable if by the exercise of ordinary care and precaution it could have avoided the injury, is only another form of saying that the defendant is liable if it has been guilty of negligence, without regard to any contributory negligence by the plaintiff.   This is not a correct enunciation of the law.   Where both parties have been guilty of negligence, which directly contributed to cause the injury, there can be no recovery, for the courts never undertake to sever, apportion and discriminate between two directly negligent acts so as to decide which act caused the injury.   There is no comparative negligence in this State. [Welch v. McAllister, 13 Mo. App. 89; 1 Sher. & Redf. on Neg. (5 Ed.), sec. 96.]

The rule that the negligence of the plaintiffs which, contributes directly to the cause of the injury will prevent a recovery, is without exception or qualification.   [Dunkman v. Railroad, 16 Mo. App. 548; Ibid, 95 Mo. 232; Craig v. Sedalia, 63 Mo. 417; Barton v. Railroad, 52 Mo. 253.]   Where the negligence of the plaintiff directly contributed with that of the defendant to produce the injury, there can be no recovery.   [Murray v. Railroad, 101 Mo. 236; Kellny v. Railroad, 101 Mo. 67.]   So if the negligence which produced the injury is mutual, the plaintiff can not recover.   [Packet Co. v. Vandergrift, 34 Mo. 55; Callahan v. Warne, 40 Mo. 132; Corcoran v. Railroad, 105 Mo. 399; Dougherty v. Railroad, 97 Mo. 647; 7 Am. & Eng. Ency. Law (2nd Ed.), p. 371 et seq.]

Upon the whole record we are satisfied that the case was properly submitted to the jury upon correct declarations of law, and that there was abundant evidence to support the verdict, and therefore the judgment of the circuit court is affirmed.   All concur.