## SENF, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, April 18, 1905.**

1. **CARRIERS OF PASSENGERS: Discharging Passengers: Pleading: Variance.** In an action for injuries received by a passenger while alighting from a street car, by reason of the passenger being discharged from the car at a place that was "disturbed, uneven and insecure," where the petition alleged the ground was lower than the car and the evidence showed that it was a foot higher, this was not a material variance.

2. ———: ———: ———: **Statutory Requirement.** If the variance had been material, it could not avail defendant unless it had complied with section 655, Revised Statutes of 1899.

3. ———: ———: **Evidence.** In such case it was error to exclude testimony offered by the defendant to show that the condition of the landing place was due to the sinking of its track in obedience to an order given by the proper city authorities.

4. ———: ———: ———: **Harmless Error.** But the error was harmless where the court, in its instructions, confined the jury to the duty defendant owed the plaintiff to stop its car at a reasonably safe place.

5. ———: ———: **Contributory Negligence.** Though plaintiff in such case was acquainted with the condition of the ground where she alighted, if she relied upon the superior knowledge of the conductor, who told her where to alight, she was not guilty of contributory negligence as a matter of law, which would preclude recovery.

6. ———: ———: **Where Contract of Carriage Ends.** The contract of carriage between a street railway company and a passenger does not end until the passenger is landed in a place of safety; if the passenger is discharged in the street at an unsafe place and, in alighting there is injured, the company is liable for the damages incurred.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster*, Judge.

AFFIRMED.

*Jefferson Chandler* and *John Lionberger Davis* for appellant.

(1) Plaintiff was not bound by any suggestion made by the conductor touching the way she should leave defendant's car. Plaintiff knew that there was no other way to leave said car at said point. The theory of the trial was that defendant was obliged, in law, to furnish a safe place to alight from defendant's car. No such obligation rested upon defendant. Creamer v. Railway, 156 Mass. 320; Conway v. Railway, 90 Maine, 199; Railway v. Boddy, 58 S. W. 647. (2) This proposition is not disputed when applied to places under the jurisdiction of defendant, and over which defendant has legal and actual control. It does not apply, however, in a case where the street is made uneven by municipal direction, and is, therefore, temporarily out of order, and especially where the disordered part of the street was not on the right of way of the defendant, and the defendant at the particular time had no power to create a special landing place. Hurt v. Railway, 94 Mo. 262.

*Carter & Sager* for respondent.

The case falls within the rule announced in the following cases and embodied in instruction I, given by the court. Fillingham v. Transit Co., 102 Mo. App. 573, 77 S. W. 314; Wilburn v. St. Louis, I. M. & S. Railway Co., 48 Mo. App. 229.

### STATEMENT.

The action is to recover damages for injuries alleged to have been caused by the plaintiff stepping on the ground as she disembarked from one of defendant's street cars. After alleging her relation to defendant as that of passenger for hire and that her destination was Kingshighway, in the city of St. Louis, where defendant's car stopped, in response to a signal from her, to permit her to alight, the petition states:

"That defendant's servants, agents and employees in charge of and operating said car, instead of stopping at the usual stopping place on the west side of Kingshighway, or at some point which would afford a reasonably safe place for a passenger to alight, unknown to plaintiff, carelessly and negligently caused said car to hault at a point about the center of Kingshighway, where the track had been elevated, or the ground about excavated to such an extent as to make the distance from the lower step of the car to the ground, too great for a passenger to alight with either comfort or safety; that the ground about the step of the car where the car was stopped, and where plaintiff was forced to alight, was disturbed, uneven and insecure; all of which was unknown to plaintiff at the time the car was stopped; that perceiving that the car had not been stopped at the usual stopping place, and being unable to determine the condition of or the distance to the ground at the point where the car was stopped, owing to darkness, plaintiff paused and hesitated and indicated to the conductor, in charge of said car, who was defendant's agent and employee, her unwillingness to leave said car; but that said servant, agent and employee carelessly and negligently ordered her to alight, telling her to jump, which she did, exercising on her part all due care and caution possible in so doing, thereby falling violently to the ground and by reason of the impact and by reason of the unsafe and uneven character of the ground, into a hole in which her right foot was forced. She received serious and permanent injuries to her right limb and thigh, the tendons of the knee joint being twisted and severed and the thigh being painfully and seriously bruised and wounded."

The answer was a general denial and the following affirmative defense of contributory negligence:

"Further answering this defendant says that whatever injuries, if any, were received by the plaintiff on the occasion in question, by and on account of the matters and things mentioned in her amended petition, were

caused by her own negligence, directly contributing thereto in this, to-wit: That on said occasion the plaintiff negligently stepped or jumped from the car, without using ordinary care in so doing, and heedlessly jumped, relying upon her own judgment and not upon the representation of the conductor as to where she would alight."

(Plaintiff testified that she was twenty-three years old; that she boarded one of defendant's cars at Sixth and Locust streets about six o'clock p. m., on the evening of October 4, 1902, paid her fare and rode to Kingshighway, where the car stopped in response to her ringing the bell; that when the car stopped she arose from her seat and walked to the back platform to get off, and waited "until two gentlemen jumped off, and they both fell or slipped and made remarks to the conductor on the car, and so I refused to get off, and I remarked it twice and said, 'You cannot expect me to get off here,' and with that the conductor took hold of my arm and stepped on the second step and said 'jump this way madam,' which I did, and I fell and slipped on the incline."

Plaintiff stated that the conductor indicated the east as the direction to alight and she stepped off in that direction slipped and fell. She lay there for a moment, was helped to the sidewalk by some gentlemen, who offered to accompany her home, whom she told she couldn't tell whether she was hurt or not, and walked to her home. Plaintiff also stated that the day was gloomy, it having rained, and that it was very dark when she reached Kingshighway; that she lived about a block from the crossing, used the Suburban cars frequently and had boarded a car at that place on the very morning of the accident. When asked about the condition of the tracks at that place on the day of the accident, plaintiff answered: "All I remember is the condition of the tracks were lower and Kingshighway was being made a straight grade." There were mud steps in the bank at the west side of Kingshighway in the morning.

The following appears in plaintiff's cross-examination:

"Q. You knew the condition of the roadway after the rain, did you? A. Yes, sir.

"Q. At the time you took the car to go down town? A. Yes, sir.

"Q. You knew it had been raining and was very slippery? A. Yes, sir.

"Q. You knew the railway track was in course of construction through Kingshighway? A. Yes, sir.

"Q. And when you left the car you left it in the safest place you could leave it at that time? A. Yes, sir.

"Q. And the conductor told you to 'Step this way, madam,' and by stepping that way that was the safest way to get off at that point? A. Yes, sir at the middle of the street.

"Q. Did the others who had slipped get off in another way? A. I presume they did.

"Q. You saw them get off and saw them slip and then the conductor said to you, 'Get off this way,' and you did? A. Yes, sir.

"Q. You had your deposition taken, didn't you? A. Yes, sir.

"Q. And in your deposition do you not say that if you had got off the other way you would have had your foot cut off? A. Yes, sir, I would have had both limbs hurt.

"Q. By getting off the way you did get off at the request, as you say, of the conductor, that was the safest way to leave the car at that point? A. Yes, sir.

"Q. When you stepped off the car—it was lighted? A. Yes, sir, it was light in the car.

"Q. Did you step up or down when you alighted? A. I was to step up.

"Q. The embankment then was higher than the railway track? A. Yes, sir.

"Q. That you are positive about? A. Yes, sir."

Defendant moved to strike out the plaintiff's evidence, for the reason the petition alleged that the ground about the track was too low for a passenger to step from the ground, whereas plaintiff's evidence shows that it was a foot higher than the track, and for this reason contradicts the allegations of the petition in respect to the condition of the ground. The motion was overruled and defendant saved its exceptions.

Plaintiff testified that there was no safe place to alight beyond where she got off, as there was an excavation there also; that she did not ask the conductor to carry her to any other place to get off, for the reason Kingshighway was her stopping place and she did not know of any safe place, in either direction, near Kingshighway; that she had to get off there or be carried a long distance on account of the condition of the tracks and the street. Evidence tending to show the character and extent of the injuries and the money she expended for medical attention was offered by plaintiff.

For defendant J. T. Jackson testified that he was an engineer employed in making surveys for the defendant railroad company; that the tracks were being lowered on Kingshighway at the time of plaintiff's injuries by order of—. Here he was stopped and was not permitted to state by whose order or by what authority the tracks were being lowered.

Defendant then offered the following written document, admitted to be genuine and properly signed, which the court, on objection of plaintiff, refused to let in as evidence, to-wit:

"City of St. Louis,
"Street Commission Department—Office,
"St. Louis, July 3, 1902.
"Mr. T. M. Jenkins,
"Gen'l Mgr. St. Louis & Suburban Ry. Co.,
"City.

"Dear Sir:

"Your attention is respectfully called to the fact that Kingshighway Boulevard between Lindell Boulevard and Easton avenue, is under contract for improvement with asphalt.

"You are respectfully requested to make the necessary adjustments to line and grade of your tracks in advance of the work of construction. Section 1770, of the Municipal Code of St. Louis, requires you to provide for the paving of the space between rails and tracks and one foot outside of rails.

"Very respectfully,

(Signed)                                    "WM. BOPP,

"Gen'l Supt. of Construction.

Approved;
     (Signed)          "CHAS. VARRELMANN,

"Street Commissioner."

Charles Varrelmann, street commissioner of the city of St. Louis, testified that he knew the condition of the embankment where plaintiff was injured. This question was then asked him: "State to the jury whether the bank, on which this lady says she stepped from the car, is on city property or the right of way of the St. Louis & Suburban Railway Company." On objection of plaintiff's counsel, the witness was not permitted to answer the question. Exceptions to this ruling were saved by the defendant.

Defendant offered an instruction, in the nature of a demurrer to the plaintiff's evidence, which the court refused. At the instance of plaintiff, the court gave the following instruction to which the defendant objected and excepted:

"1. The court instructs the jury that if they believe from the evidence that plaintiff was, on the fourth day of October, 1902, a passenger on one of defendant's cars, then it was the duty of the defendant to exercise toward her the utmost care, skill and vigilance to carry her safely to her destination, and also upon her arrival

Senf v. Railroad.

there to stop the car at its usual stopping place or at some other place where it was safe and suitable for plaintiff to alight therefrom; and if they further believe from the evidence that the agents and servants of defendant in managing said car failed to exercise the utmost care, skill and vigilance, and that by reason thereof said car was not stopped at the defendant's usual stopping place, or at some place which was reasonably safe and suitable for plaintiff to alight, but that said car was stopped at a place where the distance to the ground was so great or the ground so uneven, disturbed and insecure as to render it unsafe for plaintiff to alight by the use of care and caution on her part, and that said car was brought to a full stop for plaintiff to get off and that she did get off said car at the instance and on the invitation of the conductor in charge of said car, and that by reason thereof she fell in leaving said car and was injured, and that at the time of said injury, plaintiff was exercising ordinary care and caution under the circumstances, then your verdict should be for the plaintiff."

And defendant assigns as additional error the refusal of the court to give instructions Nos. 2 and 4, asked by it, which are as follows:

"2. If the jury believes from the evidence in this case that before plaintiff sustained any injury to her person that she had reached the ground of the street known as Kingshighway, and had fully cleared the car on which she had theretofore been a passenger, there can be no recovery in this action.

"4. The jury are instructed that if they believe from the evidence in this case that plaintiff was a passenger on defendant's car, as alleged in the petition, and that she was injured after alighting from said car at the point of her destination, by and as a result of the uneven and unsafe condition of the street in or upon which she alighted, then plaintiff cannot recover."

The jury found for plaintiff and assessed her damages at three thousand dollars. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. The gravamen of the charge in the petition is the stopping of the car at an unsafe place for the plaintiff to alight. The description of the ground with respect to the car, as set forth in the petition, is not shown by the evidence. In the petition the ground is stated to have been lower than the car, and so much lower as to make it unsafe to step from the car to the ground. The plaintiff testified that the ground was a foot higher than the floor of the platform of the car. The general description of the ground, as alleged in the petition, is that it was "disturbed, uneven and insecure." For the reason the situs of the place where plaintiff got off the car was shown by her evidence to be the reverse of that alleged in the petition, defendant claims there was a fatal variance between the allegations of the petition and plaintiff's proof, and moved to exclude her evidence. The court overruled the motion without requiring the petition to be amended to conform to the proof. This ruling is assigned as error. The assignment must be ruled against the defendant, for the reason we do not deem the variance a material one, and for the further reason defendant did not comply with section 655 (R. S. 1899) of the Code, by alleging that it was misled by the variance and proving the same by affidavit to the satisfaction of the trial court.

2. The court refused to permit the defendant to show by competent evidence that (occupying a part of the public street by its tracks) it was engaged in sinking its tracks where plaintiff got off, in obedience to an order given it by the proper city authorities. We think this was error. The defendant did not own or control the street nor establish its grade. Its occupancy of the street was permissive only and subject to the supervision of the city, and it was bound to lower or raise its

tracks to conform to the grade of the street whenever required, to do so by the city and, if it was engaged in sinking its tracks to conform to a certain grade, by order of the city, it was not making the alteration of its own volition and was not responsible for the condition of the street, caused by the sinking of its tracks, and cannot be held liable merely because the track was being lowered or the ground about the track was disturbed, uneven and insecure, if it exercised reasonable caution and skill in making the alteration. This error would be reversible but for the fact that the court, in its instructions to the jury, confined it to a consideration of the duty defendant owed the plaintiff to stop its car at a reasonably safe place to enable her to get off.

3. It is insisted by defendant that plaintiff should have been nonsuited on her own evidence. Plaintiff's evidence shows that she was not ignorant of the condition of the ground where she alighted, that she had seen and observed its condition in the morning of the day she was hurt, when she took a car at Kingshighway to go down town, and knew that defendant was engaged in sinking its tracks at Kingshighway and for some distance each way from it, and she testified that Kingshighway was her street to get on and off defendant's cars and as the car from which she alighted approached Kingshighway, she signalled the conductor to stop the car and let her off at that street. Contributory negligence is pleaded in the answer as a defense, and the question is, was plaintiff guilty of such contributory negligence as to preclude her right to recover, knowing, as she did, the condition of the ground on which she must alight?

In Warren v. Fitchburg Railroad, 8 Allen 227, cited and approved in Creamer v. West End Railway, 156 Mass. 320, it was said: "If the whole evidence introduced by the plaintiff has no tendency to show care on his part, but on the contrary shows that he was careless, it is the duty of the court to direct the jury, as matter of law, to return a verdict for the defendant." This is

but saying, if plaintiff's whole evidence shows he was guilty of negligence which directly contributed to his injury, he cannot recover. This is a settled law in this jurisdiction. Hogan v. Railway, 150 Mo. 36, 51 S. W. 473; Holwerson v. Railway, 157 Mo. 216, 57 S. W. 770; Davies v. Railway, 159 Mo. 1, 59 S. W. 982. And if the plaintiff's evidence showed that in leaving the car, she acted on her own judgment and was uninfluenced by the action and advice of the conductor, we would be inclined to hold that her evidence conclusively shows that she was careless and could not recover. But her testimony shows that after seeing two men get off the car and slip and fall, she said to the conductor: "You cannot expect me to get off here," that the conductor then took hold of her arm, stepped down to the second step, and said, "Jump this way madam," that she jumped and fell, and slipped on the incline. Now, while plaintiff's evidence shows she was not ignorant of her environment or of the general condition of the ground, we think it tends to show she relied upon the, supposed, superior knowledge of the conductor as to the condition of the ground and its safety as an alighting place. She had the right to assume from the language and conduct of the conductor that the place was a reasonably safe one for her to alight, and it is fair to presume she acted on this assumption. Mason v. Railway, 75 Mo. App. l. c. 10. While it is not the duty of conductors to assist passengers on and off cars, generally, yet it is their duty to do so in exceptional cases, and we think, considering the night, the condition of the street, and plaintiff's expressed fear of alighting, her case comes within the exception. At any rate, the conductor undertook to advise and help plaintiff off and in doing so acted for the company and it is bound by his acts, and if he was negligent in the circumstances, in selecting the place for plaintiff to alight and in assisting and advising her where to alight, his negligence is the negligence of the company for which it is liable.

4. The plaintiff's instruction (No. 1) follows the language of the petition in respect to the condition of the ground and its elevation with respect to the car; it should have followed the evidence. However, we do not think the variance is material, that the jury was misled thereby or that the error was prejudicial to defendant as the instruction as a whole correctly declared the law of the case.

5. The defendant assigns as error the refusal of the court to give its instruction No. 2, supra. The contention is that the moment plaintiff left the car, she ceased to be a passenger and the defendant owed her no further duty. Plaintiff testified that she jumped from the platform, fell and then slipped, not that she alighted on the street and, after safely alighting, slipped and fell. In view of this testimony, the contention amounts to this: that plaintiff ceased to be a passenger when she jumped from the platform and was in the air. While the street is no sense a passenger station for which street railroad companies are responsible (Booth on Street Railroads, sec. 326; Bigelow v. West End Street Railway, 161 Mass. 393; Conway v. Horse Railroad Co., 90 Me. 199), yet they are bound to avoid stopping their cars for the purpose of discharging passengers at street crossings, where the condition of the street is such as to make it dangerous for a passenger to undertake to get off, for the relation of carrier and passenger does not end until the passenger is off the car and on the street in safety. O'Brien v. St. Louis Transit Co., 84 S. W. (Mo.) 939; Fillingham v. St. Louis Transit Co., 102 Mo. App. 573, 77 S. W. 314; Lehner v. Railway, 85 S. W. 110; Richmond Street Railroad Co. v. Scott, 86 Va. 902.

We do not think the evidence warranted the giving of either Nos. 2 or 4 of defendant's refused instructions. This disposes of all the errors assigned in defendant's brief. Discovering no reversible error in the record, the judgment is affirmed. All concur.