## BEULAH CLONTS et al., Respondents, v. LACLEDE GAS LIGHT COMPANY, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. **ELECTRICITY:** Master and Servant: Negligence. An employee while operating an electric elevator of defendant to convey materials to different parts of the building, had to grasp an uninsulated wire tiller rope. The current to operate the elevator was furnished by one of defendant's wires carrying 500 volts with a direct current. The evidence shows that on the morning of the accident, and at the same hour, the employees of another electric company were repairing the latter company's line at a place where its wire was hung below the line of defendant. The other company's line carried over 2000 volts with an alternating current. While the repairs were being made the slack was taken out of the high voltage wire and it was brought in contact with defendant's wire which

furnished the power for the elevator, and this current of elec-
tricity burned the insulation off of both wires and burned
out the insulation in the elevator and ran along the wire
tiller which was being held by the employee, who received
the high voltage in his body and was killed. *Held*, that the
evidence failed to show defendant's negligence and plaintiffs
were denied a recovery.

2. ————: **Insulation of Wires: Reasonable Care.** A reasonable ef-
fort to control electricity is nothing short of the utmost effort,
and in the insulation of wires and keeping them insulated
every protection which is reasonably accessible must be used.

3. **MASTER AND SERVANT: Negligence: Reasonable Time to
Prevent Injury: Electricity.** Plaintiffs' decedent was electro-
cuted while operating defendant's elevator because a high volt-
age electric wire of another company was forced into the
violent contract with defendant's wire which operated the ele-
vator, this contact being caused by the servants of the company
operating the wire carrying the high voltage. The evidence
showed that defendant's wire was properly insulated; that de-
fendant was not responsible for the contact of the wires; and,
it further appeared that defendant did not have a reasonable
time after the dangerous act was committed in which to
discover the danger and obviate its probable consequence, *held*,
that defendant was not guilty of negligence.

4. **PLEADING: NEGLIGENCE: Allegation of Specific Acts of Neg-
ligence: Duty to Prove.** Where plaintiff alleges specific acts
of negligence, he has the duty of proving the acts alleged.

5. **NEGLIGENCE: Proximate Cause.** Plaintiffs' decedent, while
operating defendant's elevator, received an electric shock
which resulted in his death. The evidence showed that the
elevator was defective, but that the proximate cause of the fatal
accident was the act of the servants of another company in
bringing in contact with the wire which furnished the elec-
tricity by which the elevator was operated another electric
wire carrying a very high voltage, and that the accident would
have resulted even if the elevator had been in perfect con-
dition. *Held*, that the defendant was not liable for the death
on account of the defects in the elevator because these defects
were not the proximate cause of the injury.

Appeal from the St. Louis City Circuit Court.—*Hon.
Charles Claflin Allen*, Judge.

REVERSED.

*Percy Werner* for appellant.

(1) Clonts did not receive the fatal shock from electricity which defendant had negligently or otherwise permitted at all times to pervade its premises, but from the invasion of foreign electricity. The shock was due to a cause of which defendant had no knowledge and over which it had no control. The case is one, not of variance, but of a total failure of proof. R. S. 1899, secs. 655, 798; Hogan v. Railway, 150 Mo. 36; Chitty v. Railroad, 148 Mo. 75; Harper v. Railroad, 44 Mo. 488; Current v. Railroad, 86 Mo. 66; Bohn v. Railroad, 106 Mo. 429; Kaw Co. v. Railroad, 129 Mo. App. 502; Breen v. Cooperage Co., 50 Mo. App. 212; Brown v. Hershey Co., 65 Mo. App. 166; Miller v. Clark, 78 Mo. App. 447. (2) The shock which killed Clonts followed immediately upon the act of the employes of the Union Company in bringing its heavily charged wire in contact with the light voltage wire of the defendant. The law is that defendant must have a reasonable time after the dangerous act is committed in which to discover it and obviate its consequences. Lampert v. Gas Light Co., 14 Mo. App. 397; Frauenthal v. Light Co., 67 Mo. App. 8; Abbott v. Mining Co., 112 Mo. App. 556; Dodge v. Coal Co., 115 Mo. App. 507; Hach v. Railroad, 117 Mo. App. 15; Kelley v. Railroad, 105 Mo. App. 376.

*E. C. Crow, Guy E. Golterman* and *Jeffries & Corum* for respondents.

Defendant, in the conduct of its business, was utilizing one of the most, if not the most, dangerous agencies known to science—electricity. It was, therefore, incumbent on it to exercise an extraordinarily high degree of care to protect its servants from the consequence of contact with that element. It was defendant's duty to exercise such care as was commensurate with the danger. Curtis v. McNair, 173 Mo. 280; Paden v. Van Blarcum, 181 Mo. 117; Winkleman v. Light Co., 110 Mo. App. 189; Geisman v. Electric Co., 173 Mo. 654.

NIXON, P. J.—This was an action brought by the minor children of S. C. Clonts for damages for his death while employed by the appellant in operating an electric elevator. Judgment in the trial court was for the respondents in the sum of five thousand dollars, and the case is here on defendant's appeal.

The appellant company maintained a building at the corner of Convent and Second streets in the city of St. Louis known as Station A. It was used for generating and storing fuel and illuminating gas. This building was equipped with an electric elevator. Clonts, the deceased, was in the employ of the appellant as a laborer at this building, and it was a part of his duty to use the electric elevator in conveying materials from different parts of the building. In order to operate the elevator, it was necessary to grasp with the hand an uninsulated iron tiller rope which constituted a part of the equipment of the elevator. The motive power was, of course, electricity, and was supplied by one of defendant's wires carrying a 500 voltage which was a direct current generated in the same building and not an alternating current. This 500 volt circuit was the only electric wire that ran into Station A.

On the morning of the 6th of September, 1905, at 11:15 o'clock, while the said Clonts was in the line of his duty operating this elevator by grasping the iron tiller rope with his hand, he received from such wire rope into his body a powerful current of electricity which caused his instant death.

At that date, the Union Electric Light & Power Company of St. Louis, another corporation, maintained poles and wires at the corner of Finney and Taylor avenues in the city of St. Louis, some four or five miles from where the deceased was killed. The Union Company's wires carried a voltage of 2300 and with an alternating current. The 500 volt wire which operated the elevator at Station A also extended to the crossing of Finney and Taylor avenues. The poles and wires of the Union

Company which carried the 2300 voltage ran east and west along Finney avenue and across Taylor avenue. The 500 volt wire of the appellant was strung north and south along Taylor avenue, crossing above the high volt-age wire of the Union Company. The wires of the Union Company were strung at a later date than that of the defendant, and, in order to avoid contact at the point of crossing, the wires of the Union Company were allowed by such company to sag some fifteen or eighteen inches below the said wire of the defendant. At the hour of Clont's death, the employees of the Union Company were at work on the poles and wires of said company at the corner of Finney and Taylor avenues for some reason repairing the Union Company's line. By putting a strain on the pole at that point and suddenly pulling it back, a guy wire was tightened in such a manner as to raise the Union Company's high voltage wire until it came in contact with the wire of the defendant. The immediate effect of the contact of the two wires was to burn the insulation off of both and charge both wires with the same voltage. The high voltage of the Union Company's wire sought an outlet on the lighter wire of the defendant, ran instantaneously along that wire and entered the building in which Clonts was operating the electric elevator, burning out the insulation in the elevator and running along the wire tiller rope by which the elevator was being operated by Clonts, so that Clonts who had hold of the iron tiller rope received the 2000 or 2300 volts of electricity, causing his instant death.

The evidence was unquestioned that the wire of the defendant at the crossing of Finney and Taylor avenues at the place where the contact took place was properly insulated. There was no evidence that there had ever been any trouble at that point by reason of the two wires coming in contact prior to the fatal accident. There is no evidence in this record to show that this defendant had any notice whatever or any knowledge that the work was to be carried on by the employees of the Union Company

on their line at the point where the actual contact took place; nor is there any evidence to show that if they had known the fact that said employees of said company were engaged on its line at said point, they could have anticipated that said employees would bring the wires of the two companies into contact. The evidence is that Clonts was killed at the electric elevator on September 6, 1905, at 11:15 o'clock.   The automatic apparatus and indicator in the office of the Union Company and its records showed that notice was received at such office on that date at 11:13 a. m., the indicator showing that the ground trouble was in the locality of Finney and Taylor avenues.   The operator of the electric wire system of the defendant at Station A had his attention called to the unusual condition of its wire by an unusual flash of light caused by the high tension current on its line.   This he observed and recorded the hour at the time and it was 11:15 a. m. by his clock, the precise moment at which the evidence shows Clonts was killed.   W. J. O'Brien testified that he was working for the defendant at Station A and remembered the accident.   He said: "I made a report of the death of Clonts; it occurred at 11:15 a. m."

The evidence was conflicting as to whether the elevator which the deceased was operating was properly constructed and insulated.   The evidence of the respondents tended to show that frequently electricity was in the iron tiller rope before the accident; that electricity frequently leaked through into the tiller rope from the 500 volt wire that operated the elevator, but that it was generally in harmless quantities, and it was not shown that this electricity had ever been dangerous, although the elevator had been in operation for over two years prior to the accident.   There was some evidence that on the morning after the accident, the tiller rope was charged with electricity that did not come from the 500 volt wire.   The evidence tended to show that the elevator was frequently out of order and defective in its

electrical and mechanical construction.    There was no
evidence that by the use of vulcanized fiber or the use of
other insulating materials, a current of 2000 or 2300
volts would have been resisted.    Some statements were
made to the effect that vulcanized fiber is sometimes
used for insulating purposes.    The evidence further
shows that 500 volt electric elevators were never
equipped with any insulation or safe-guard against out-
side high potentials carrying 2000 or 2300 volts, and
that there is no known insulation or protection which
which a 500 volt electric elevator could be equipped
which would withstand a 2000 or 2300 voltage on its
wires; that electric elevators are not built to carry that
voltage and that if that voltage should come in on them
at any time, it would burn up the machine; that eleva-
tor machines are not insulated for any voltage over
500.

In this connection, respondents offered Thomas B.
Carter as a witness.    He stated that he was in the city
lighting department and supervisor of the city lighting
for St. Louis and had held the place for over four years.
He stated that he was a graduate and had also had prac-
tical experience since 1896; had been with the Bell
Telephone Company as engineer for several years and
also with the Electric Light Company.    That he had
supervision of all the street lights, the lighting of pub-
lic buildings, poles, wires, and lines on the streets.
That he was in charge of all plants generating elec-
tricity in the city and had supervision over all of them.
That he saw all the permits and inspected all the work
from the city's standpoint and was thoroughly familiar
with the wiring in the city.    He stated that electric ele-
vators are not so insulated as to protect them from out-
side invasion, such as a trolley system or a high poten-
tial electric system.    "As a sunbonnet on a woman
might protect her from the rays of the sun, and yet offer
not much protection or resistance if she was struck with
a club, so the insulation provided for an electric ele-

vator which runs under a 485 or 500 voltage, would not be designed to protect that elevator from 2000 high potential voltage." ". . . and during the time I have spoken of, I do not think I have ever heard of anybody using an electric elevator in the city having been killed by reason of any extraneous power coming in contact with the wires which provided the power for operating the elevator. It would have been the duty of the police officers to have notified us of any such occurrence."

The rule as to defendant's duty, as established in this State, is that, considering the noiseless, hidden and destructive power of electricity, a reasonable effort must be used to control it, but that a "reasonable" effort is nothing short of the utmost effort, and that it was the defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wire at Finney and Taylor avenues and to use the utmost care to keep it insulated. [Geisman v. Missouri-Edison El. Co., 173 Mo. 654, 73 S. W. 654; Winkelman v. K. C. El. Light Co., 110 Mo. App. 184, 85 S. W. 99; Keown v. St. L. T. Co., 191 Mo. 441, 90 S. W. 1142; Booker v. Southwest Missouri R. Co. (decided at this term).]

In this case, the agency that produced the deadly contact of the two wires at Finney and Taylor avenues produced the instant death of S. C. Clonts, and the defendant had no reasonable time—had no time whatever —in which to discover the danger and obviate it. The shock which killed Clonts followed instantaneously upon the act of the employees of the Union Company in bringing its heavily charged wire in contact with the lighter voltage wire of the defendant. The defendant, not being responsible for the contact of the wires, the law is that there is no negligence on its part unless it had a reasonable time after the dangerous act was committed in which to discover the danger and obviate its probable consequences. [Lampart v. Laclede Gas Light Co., 14 Mo. App. 376; Frauenthal v. Laclede Gas

Light Co.,  67 Mo. App. 1; Abbott v. Marion Mining Co., 112 Mo. App. 550, 556, 87 S. W. 110; Dodge v. Manufacturers Coal & Coke Co., 115 Mo. App. 501, 507, 91 S. W. 1007; Hach v. St. L., I. M. & S. R. Co., 117 Mo. App. 11, 15, 93 S. W. 825; Kelley v. C. & A. R. Co., 105 Mo. App. 365, 376, 79 S. W. 973.]

In this case, as we have seen, no insulation known to electrical science could have protected defendant's elevator from the invasion of the high potential current coming from the wire of the Union Company and saved the life of the deceased when the 500 volt wire running the elevator was brought in contact with the high voltage wire at Finney and Taylor avenues.

Plaintiffs alleged and predicated their right of recovery in their petition on certain specific acts of negligence, and the gravamen of their charge is particularly set forth in the petition as follows: "Plaintiffs charge the fact to be that the electricity which so entered the body of said S. C. Clonts was roving and uncontrolled electricity, which defendant had knowingly and negligently permitted to pervade its premises, elevator and iron tiller rope; that the death of said S. C. Clonts was directly due to defendant's negligent failure to protect said iron tiller rope, elevator and person of deceased by means of proper safe-guards and appliances against said roving and uncontrolled currents of electricity."

The proximate cause of Clonts' death was the accidental taking of the slack out of the wire of the Union Company by its employees and raising their wire suddenly up against that of the defendant, which instantaneously electrocuted the deceased.  There is no evidence of any probative force in this record to show that Clonts was killed by electricity which the defendant had knowingly and negligently permitted to pervade its premises; but the evidence does show that his death was due to the contact of the wires on Finney and Taylor avenues.  The plaintiffs having alleged specific acts of

negligence, had the duty of proving the acts as alleged or their cause of action failed.   [Hogan v. Citizens' Ry. Co., 150 Mo. 36, 51 S. W. 473; Chitty v. St. L., I. M. & S. Ry. Co., 148 Mo. 64, 49 S. W. 868; Curren v. Mo. Pac. Ry. Co., 86 Mo. 62; Bohn v. C., R. I. &. P. Ry. Co., 106 Mo. 429, 17 S. W. 580; Kaw Feed and Coal Co. v. A., T. & S. F. Ry. Co., 129 Mo. App 498, 107 S. W. 1034.] There was a failure of proof of the acts of negligence upon which the petition was based, in its entire scope and meaning under section 798, Revised Statutes 1899.

There is no evidence that any amount of vigilance on the part of the defendant would have enabled it to have foreseen or guarded against the contact of the wires which was the approximate cause of the accident. The defendant is not an insurer of the lives of its employees.   And the defendant, not having been guilty of any negligence in preventing the contact of the wires at Finney and Taylor avenues, or in any way contributing to or concurring in the result, is not chargeable with a legal liability by reason thereof.

Respondents dwell with much emphasis on the case of Moran v. Corliss Steam-Engine Co. (R. I.), 45 L. R. A. 267, and claim that the facts in that case were so identical to those in the present case as to make them parallel cases so that the same rules of law should apply to both cases.   That was an action in which the electric wires of the Corliss Steam-Engine Company were strung on poles above the wires of another company carrying a current of high potentiality in such a way that natural agencies, such as wind or snow, would likely cause the upper wire to sag and come in contact with the lower wire, causing injurious results to follow.   The wires of the Corliss Company were placed in such proximity to the other electric wires that the accidental crossing or high winds was of sufficient frequent occurrence to have suggested to the defendant in that case the liability of accident from that cause and to have warned defendant to take proper precautions against any injurious

effects upon its employees thereby; and the accident which caused the injury, having been caused by the wind bringing the wires in contact, as should have been anticipated by the defendant, they were held liable in an action for damages for the accident caused by reason of defective insulation, possibly occasioned, as the court say, by the rubbing together of such wires, directly causing the injury, which the defendant should have anticipated, and consequently was negligent in not guarding against said danger.

It is evident from the merest inspection of the facts in that case that they present no analogy to the case now under consideration. The injury in that case was due to the operation of well known natural laws which any ordinarily prudent person ought to have anticipated and guarded against, and the injury in that case was the direct result of such negligence. In the present case, the contact of the wires at Finney and Taylor avenues was not due to natural agencies, acting according to well known laws, but to human agents over whom the defendant had no control and whose actions the utmost intelligence and vigilance of the defendant could not have anticipated or prevented.

It is true that the evidence of the plaintiffs tended to show that the elevator was so defectively constructed as to need frequent repairing, and that by reason of its defective insulation, the electricity that ran the elevator escaped from the defendant's 500 volt wire into the iron tiller rope that operated the elevator. But the evidence further showed that during the two years that the elevator had been in operation prior to the accident, such escape or leakage of electricity had been so harmless that no one had been injured. The evidence conclusively shows that the accident was not due to any defect or imperfection in the elevator or any of its appliances, and that the fatal results would have as surely and inevitably followed however perfectly such elevator might have been constructed, or however carefully it

might have been maintained in all its electrical and mechanical parts and appliances.

We have found, upon a most careful examination of the facts in this case, no negligence of the defendant directly or proximately contributing to the unfortunate death of S. C. Clonts, and defendant is therefore not chargeable with any legal liability. It therefore becomes our duty to reverse the judgment in this case and it is so ordered. All concur.