A. H. HURST, Respondent, v. NINETEEN HUNDRED NINE MINING COMPANY, Appellant.

Springfield Court of Appeals, December 4, 1911.

1. MASTER AND SERVANT: Mines and Mining: Injury to Servant: Falling Roof: Failing to Inspect. Plaintiff was injured by rock and dirt falling on him from the roof of a mine while he was assisting in timbering in a drift of the mine. The specific negligence pleaded was a failure of defendant to inspect and trim the roof of the drift. Under defendant's testi-

mony no inspecting or trimming had been done for at least two hours before plaintiff was sent to work in this drift and there was direct testimony that the roof was liable to loosen and fall in an hour after being trimmed. *Held*, that under the testimony the question of whether the inspecting and trimming was done as frequently as it should have been done was for the jury.

2. **APPELLATE PRACTICE: Demurrer to Evidence: Jury Question.** In determining whether plaintiff has made a case entitling him to go to the jury, the appellate court must give the plaintiff the benefit of the testimony most favorable to him and allow every reasonable inference in his favor. Therefore, if in the light of the above rule it is found that a case is made or if it appears that reasonable minds might differ as to the effect of the evidence, it is a question for the jury.

3. **MASTER AND SERVANT: Safe Place to Work: Knowledge of Master.** To hold the master liable for failure to furnish the servant a safe place to work, the evidence must show that the defect complained of was known to the master, or by the use of ordinary care could have been known in time to have removed or remedied it before the injury.

4. **MINES AND MINING: Trimming Roof of Mine: Master and Servant: Duty to Inspect.** The duty of a mine owner to inspect and trim the roof of a mine, so as to prevent injury to his servants working therein and the frequency of said inspection must be commensurate with the danger. If the danger be constant then the vigilance to avert it must be constant.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Spencer, Grayston & Spencer* for appellant.

(1)  To make a case of negligence, the evidence must show that the defect existed prior to the happening of the accident and that defendant either knew of its existence, or could have known of its existence by the exercise of ordinary care and for a sufficient time before the happening of the accident to enable it to remedy same. Abbott v. Mining Co., 112 Mo. App. 550; Wojtylak v. Coal Co., 188 Mo. 260; Rowden v.

Daniel, 132 S. W. 23. (2) The customary manner of doing things is the conclusive test of the exercise of ordinary care. Mason v. Mining Co., 82 Mo. App. 367.

*Thompson & Thompson* for respondent.

(1) Where the evidence tends to show that the defect that produced the injury complained of, existed, and that a proper examination would have revealed such defect, then it is a question for the jury to determine whether or not the master could have known of such defect, by exercise of ordinary care, in time to have averted the injury. Hollweg v. Telephone Co., 195 Mo. 145; Fisher v. Lead & Zinc Co., 156 Mo. 479. (2) The trial court in passing upon a demurrer to the evidence should place the most favorable construction possible on plaintiff's theory of the evidence, allowing every inference that could be reasonably deducted from the evidence in his behalf. [Deitring v. Transit Co., 109 Mo. App. 524; Phelan v. Paving Co., 115 Mo. App. 423; Luehrmann v. Gas Light Co., 127 Mo. App. 217; Root v. Railroad, 195 Mo. 368. (3) The master is bound to exercise ordinary care to provide his servants with a reasonably safe place to work. Smith v. Coal Co., 75 Mo. App. 177; Knight v. Sadtler, 91 Mo. App. 578; Carter v. Baldwin, 107 Mo. App. 217; Hammon v. Coal Co., 156 Mo. 234; Hollweg v. Tel. Co., 195 Mo. 145. (4) The servant has a right to rely upon the presumption that the master has made the place reasonably safe, in the absence of knowledge that it is not safe. Doyle v. Trust Co., 140 Mo. 1; Koerner v. Car Co., 209 Mo. 141; Himrod Coal Co. v. Clark, 99 Ill. App. 332, 197 Ill. 514. (5) It is the duty of the foreman, if the work is hazardous, to take every reasonable precaution to insure the safety of the employees. Bokamp v. Railroad, 123 Mo. App. 270; Seals v. Whitney, 130 Mo. App. 419.

COX, J.—Action for damages for injury to plaintiff caused by rock and dirt falling from the roof of a mine while plaintiff was at work therein. Judgment for plaintiff for $200 and defendant has appealed.

Defendant is the owner of a mine near Neck City in Jasper county in which plaintiff was employed and at work at the time of the alleged injury. All the men in the mine were under a ground foreman and he directed and controlled all the work. Plaintiff's usual duties were to run a machine used in drilling holes for blasting but he was also required to do whatever he was told to do by the ground foreman. On the 12th of March, 1910, plaintiff was directed to assist in timbering a reach in a drift of this mine and while he was thus engaged rock and dirt fell from the roof of the drift, struck and injured him. The ground of negligence upon which plaintiff's action is based is a failure of defendant to perform its duty to him in not furnishing him a reasonably safe place to work. The specific negligence in that regard is alleged to be a failure to inspect and trim the roof of the drift and pull down the loose stuff, rocks and boulders therefrom.

Appellant's counsel with commendable frankness concedes the well settled rule of law that it was the duty of defendant to use ordinary care to furnish plaintiff a reasonably safe place in which to work and that the instructions to the jury in this case fairly submitted the issue as to whether or not that duty was properly performed, but contends that the evidence is insufficient to support the verdict and insists that the demurrer to the testimony should have been sustained, and this is the only question for our determination. The rule of law by which we are to be guided in determining this question is also well settled. We cannot weigh the testimony for that duty is placed upon the jury alone, but we must give the plaintiff the benefit of the testimony most

favorably to him and allow every reasonable inference in his favor therefrom. [Hollweg v. Bell Tel. Co., 195 Mo. 149, 165, 93 S. W. 262; Phelan v. Granite Bituminous Paving Co., 115 Mo. App. 423, 432, 91 S. W. 440.]

If when the testimony is considered in the light of the above rule it is found that a case is made, or if it appear that reasonable minds might differ as to the effect of the evidence, the question is one for the jury. [Eckhard v. Transit Co., 190 Mo. 593, 611, 89 S. W. 602; Powers v. Transit Co., 202 Mo. 267, 280, 100 S. W. 655; Williamson v. Transit Co., 202 Mo 345, 376, 100 S. W. 1072.]

Keeping these rules of law in mind and looking to the testimony we find the following state of facts: This mine had several drifts. These were 12 to 14 feet wide and 12 to 14 feet high. The composition in which the mineral was found was not hard but the mining was done by boring holes therein with a drill machine and blasting. The roof of the drift was of a soap-stone and mendic formation and liable to loosen at any time, then take weight, as the witnesses describe it, and finally fall of its own weight. When a drift had been run back for 12 or 14 feet timbers were then placed in it to brace the roof and prevent caving. Until the timbering was done and the drift made secure against the possibility of caving it was the custom to inspect and trim the roof at intervals and take down the loose stuff before it would gather enough weight to fall, and in this way the safety of the drift for the workmen was maintained until the timbering was done. The inspection was usually done by prodding the roof with some metallic tool and its condition was determined by the sound. If it gave a dead sound it was safe and if it gave a drummy sound, that indicated looseness and it was then the duty of the trimmer to take down the loose material. There were two men in this mine that did all the inspecting and trim-

ming but they did it as directed by the ground boss. The plaintiff did no inspecting or trimming and it is conceded that the ground boss was a vice-principal in this case. The plaintiff at the time of the injury was assisting in putting in timbers, and when he was directed to do so he was informed by the ground boss that the drift was in good shape for timbering and that it would be safe to go ahead and work. The plaintiff had been at work 30 minutes to an hour before the accident and the last inspection and trimming was done two or three hours before he began work, so that, at the time of the injury, there had been no inspection or trimming for from two and one-half to three and one-half hours. The witnesses all agreed that the roof, by reason of its peculiar formation, was liable to loosen at any time and that it might become loose in a short time after trimming. Plaintiff testified that it could be rendered temporarily safe by trimming, which meant, of course, that for a short time after trimming it would remain safe. There was no testimony that it would become loose and drop suddenly but the tendency of plaintiff's testimony was to the effect that it would gradually loosen until it had gathered sufficient weight to fall.

Was there sufficient evidence to take the case to the jury? To hold a master liable, the evidence must show that the defect complained of was known to the master or by the use of ordinary care could have been known in time to have removed or remedied it before the injury. [Wojtylak v. Coal Co., 188 Mo. 260, 87 S. W. 506; Abbott v. Mining Co., 112 Mo. App. 550, 8 S. W. 110; Clonts v. Laclede Gas Light Co., 144 Mo. App. 582, 589, 129 S. W. 238.]

The defendant in this case seems to have realized that it was its duty to use some care to protect its workmen from injury for it had a ground boss overseeing the entire work and had placed two men at his disposal who at his bidding were required to inspect

and trim the roof of all drifts in the mine. The vital question in this case is whether or not the inspection and trimming was done as frequently as the nature of the work and condition of the roof of the drift required. Had the roof been of solid rock with no reasonable apprehension of caving in, no inspection or trimming would have been necessary because no danger from that source could be reasonably apprehended. This case presents a different situation. Here it is known that the roof is not permanently safe until timbers are put in to support it. The men while cutting the drift back a distance of 12 to 14 feet and while erecting timbers must work under the roof of this drift, the material of which is likely to crack and loosen at any time and if not trimmed will gather weight until it falls. The duty to inspect and trim a roof of this character must be commensurate with the danger. If the danger be constant, then the vigilance to avert it must be constant, as far as danger would be apparent to a man of ordinary prudence and care. Under defendant's own testimony in this case, no inspecting or trimming was done for at least two hours before plaintiff was sent to work in this drift, while there was direct testimony that the roof was liable to loosen and fall in an hour after being trimmed. Under this testimony we are clearly of the opinion that the question whether the inspecting and trimming was done as frequently as it should have been done was one for the jury. Judgment affirmed. All concur.