HACH, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 27, 1906.

1. MASTER AND SERVANT: Safe Place to Work: Ordinary Care. A railroad company is not the insurer of the safety of its track and roadbed, but is bound to use ordinary care to keep them reasonably safe for the use of its employees.

2. ————: ————: ————: Notice and Inspection. Where a locomotive engineer was killed by the derailment of his engine caused by a rotten tie and the breaking of a rail, in an action by the widow for damage on account of the death, the plaintiff was entitled to recover if the track was in such bad condition as to cause the accident and if the defendant's employees knew, or by the exercise of proper care and inspection, could have known of the defective condition.

3. ————: ————: ————: ————: Jury Questions. The questions as to whether the track was in bad condition, causing the injury and whether the defendant's employees knew, or by reasonable care, could have discovered it, were properly for the jury.

Appeal from Butler Circuit Court.—*Hon. James L. Fort,* Judge.

REVERSED AND REMANDED.

*Martin L. Clardy, James F. Green* and *E. A. Green* for appellant.

Instruction No. 13, requested by the defendant, ought to have been given. The employer is not an insurer of the sufficiency, nor of the absolute safety of the applicances furnished by him. He is required only to use ordinary and reasonable care and foresight in procuring such appliances and keeping them in repair, to the end that the same shall be safe. Flynn v. Union Bridge Co., 42 Mo. App. 529; Wojtylak v. Coal Co., 188 Mo. 260, 87 S. W. 506; Purcell v. Tennent Shoe Co., 187 Mo. 285, 86 S. W. 121; Minnier v. Railroad, 167 Mo. 112, 66 S. W. 1072; Krampe v. Brewing Association, 59 Mo. App. 277; Furber v. Bolt & Nut Co., 185 Mo. 301, 84 S. W. 890; Glasscock v. Dry Goods Co., 106 Mo. App. 657, 80 S. W. 364; Kelley v. Railroad, 105 Mo. App. 365, 79 S. W. 973.

*Wilson Cramer* for respondent.

It is the duty of every railroad company to keep its roadbed and track in a reasonably safe condition, and for a failure so to do it is liable in damages to its operatives who sustain injury by reason of such neglect. Stoher v. Railroad, 91 Mo. 509, 4 S. W. 389; McPherson v. Railroad, 97 Mo. 253, 10 S. W. 846; Burdict v. Railroad, 123 Mo. 221, 27 S. W. 453.

GOODE, J.—Plaintiff's husband, a locomotive engineer, was killed on February 25, 1904, while in the employ of defendant company. His engine was derailed and toppled over, carrying him under it and crushing him so that he died. The great weight of the evidence goes to show the accident was caused by the breaking of one of the north rails of the railroad track and that the rail broke because a rotten tie gave way under the weight of the locomotive. This tie was immediately beneath a

joint where the ends of two rails came together. As the locomotive ran over the joint, the decayed tie broke, and in consequence the weight of the engine bore down the east end of the westernmost of the two rails which met at the joint and broke it at a point some six feet from the joint. When the tie gave way, the end of the rail was left unsupported and it bent under the load of the engine so far that it snapped in two. When the front wheel of the engine reached the broken end, the wheel was deflected from the rail and the engine careened over and fell down an embankment.

Much testimony was introduced that the roadbed was in bad condition in the vicinity; that the ballast had been washed out by the pouring down of rainwater from a hill on the south side of the track and that a great many of the ties were rotten. Defendant's foreman in charge of that section swore the roadbed needed working all along and that he had a force inadequate to keep it in good order. His superior, the roadmaster, gave evidence to the contrary.

The negligence charged against defendant was permitting its roadbed to be in an unsafe condition at the place of the accident, and failing to replace with good ties the rotten ones beneath the rail that broke under the locomotive.

The answer was a general denial of the allegations of the petition and a plea that the death of deceased was due to his own carelessness; a plea unsupported by the testimony.

A perusal of the record cannot fail to impress anyone with the conviction that deceased lost his life as a direct result of the bad condition of defendant's roadbed, and that this condition was due to defendant's neglect to provide a sufficient section force to keep the road in repair. It is, therefore, with reluctance that we have yielded to the conviction that prejudicial error occurred in the trial of the cause which requires us to return it for a retrial.

The case was instructed on the theory that defendant was an insurer of the reasonable safety of its roadbed and track, instead of on the theory that it only insured their safety in so far as they could be kept safe by diligence. The first instruction given for plaintiff declared that defendant owed deceased the duty of keeping its track and roadbed in a reasonably safe condition. This charge omitted to state that defendant's duty was to use ordinary care to keep its road in a reasonably safe condition. The second instruction given at plaintiff's request, declared that if her husband was killed by the overturning of his engine, and it was caused to overturn by the breaking of one of the rails of defendant's road, and the jury found that at the time and place of the occurrence the railroad track was out of repair and unsafe, and that some of the ties under the broken rail were decayed and the derailment of the engine was due to such decayed condition of the road, plaintiff was entitled to recover. That instruction omitted to state, as a fact essential to plaintiff's recovery, that the decayed ties and unsafe condition of the road must be ascribable to lack of ordinary care on the part of defendant. These omissions were emphasized by the refusal of an instruction requested by defendant which told the jury in substance, that if they found the employees of the defendant did not and could not, by careful examination and inspection, detect the unsound and decayed condition of the ties the verdict should be for defendant. If the instructions for the plaintiff had hypothesized all the facts essential to a recovery, we might not consider the refusal of the instruction just mentioned as ground for reversal; inasmuch as there was proof that the section gang was too small to make adequate inspections. Defendant has no cause to complain of the instructions, except for the failure to carry into them as a condition of recovery, that defendant must have been negligent in respect to the condition of its roadbed and ties. The company was

charged with the duty to deceased of maintaining its track and roadbed in a reasonably safe condition so far as that could be done by the exercise of ordinary care. But if the decayed part of the tie which caused the rail to break under the weight of the locomotive was not yet large enough to be detected by proper inspection, and such inspections were made regularly, defendant was not to blame for not having replaced the tie with a sound one. An employer is accorded time and a chance to detect a fault which may arise in the applicances an employee must use, and his liability for any causalty which may occur from the defect, begins when he has had reasonable opportunity to discover and correct it. Though to our minds the weight of the evidence supports the proposition that the track was unsafe, and that this was imputable to the lack of a sufficient force of men on the section to properly inspect and maintain the track, all the testimony was not that way and hence issues arose for the jury as to what the facts were. Defendant's roadmaster swore that he visited the scene of the wreck the morning after it occurred, and examined the track. After testifying regarding the broken rail he gave this testimony:

"Q. Did you notice any broken ties? A. No, sir.

"Q. You never? A. No, sir.

"Q. You never noticed any broken? A. No, sir.

"Q. There were no absent ties? A. No, sir.

"Q. Were the ties sound or rotten? A. Sound ties.

"Q. Sound ties? A. Yes, sir.

"Q. Now, could anybody have gone along there, any workman, no matter how skilled in the working or construction of a railroad, could he have gone along there, if there was anything the matter with them could he have told it by looking at the ties? A. No, sir.

"Q. It was a fresh break? A. Yes, sir.

"Q. Could anybody, however expert he might be, and however skilled he might be, come along there and

tell there was anything the matter with the rail, that it was going to break, that something was going to happen could he have told that?  A.  No, sir................

"Q.  Then, you don't mean to say there was no broken tie there at the wreck, do you?  A.  The wreck had broken up the ties there at the time of the wreck, yes, sir—there was broken ties when the wreck occurred.

"Q.  You don't want the jury to understand that there was no broken tie there at the time of the wreck? A.  The wreck broke the ties.

"Q.  The wreck broke the ties?  A.  Yes, sir.

"Q.  When did you get there at this wreck?  A. 9:30 the next morning."

Another witness (Beard) swore that though the tie was decayed under the point in question, the track at the place of the wreck was in a reasonably safe condition. The section foreman swore he had been over the road there on the morning preceding the accident and was over it every day or two on an inspection trip, but did not discover any rotten ties.  A portion of his testimony was the following:

"Q.  Did you see that place before this wreck? A. Yes, sir.

"Q.  Was it in a condition that you could detect it when you passed over it, before the wreck?  A.  I hadn't detected it, if there was anything wrong.

"Q.  Did you examine the road?  A.  Yes, sir, that is my business over the track.

"Q.  Now, Mr. Arthur, what are the duties of the section foreman?  A.  To examine the track and keep it in repair.

"Q.  Is it his duty to examine the ties?  A.  Yes, sir.

"Q.  Could you have told this tie, that was broken, that there was anything wrong with it, until after the wreck, unless you had gotten a pick and dug down into it?  A.  I dont know — I didn't detect it.

"Q.  By the examination you are expected to give, could you have detected it was a bad tie?  A.  No, sir,

not without a closer examination than just passing over it."

We are far from satisfied that proper inspections were made, or that the decayed tie which caused the accident could not have been discovered by such inspections, in time to have replaced it with a good tie and thereby have averted the wreck. But the foreman himself said he did not know whether he could have detected the decay of the tie without a more rigid test than, perhaps, was required, and neither can we know. As said, such questions are for the jury when different inferences may be drawn as to what the truth is; and from the evidence in this case inferences are possible that the ties where the wreck occurred were all sound; or, if one of them was decayed, that defendant's trackmen had not been remiss in failing to discover that it was. Hence it should have been left to the jury to say whether the road-bed and ties were in bad order and defendant's employees knew, or by due care, could have known the fact and remedied it before the accident. If there is no statute on the subject, it is the universal rule, we believe, that a railroad company is not an insurer of the safety of its track, even to passengers; but is bound to use great care to keep it safe for their use, and to use ordinary care to keep it safe for the use of employees. [2 Shearman & Redfield, Negligence, sec. 406; 3 Elliott, Railroads, 1268; Gibson v. Railroad, 46 Mo. 163; Lewis v. Railroad, 59 Mo. 495, 504; Bowen v. Railroad, 95 Mo. 268, 276, 8 S. W. 230; Dayharsh v. Railroad, 103 Mo. 570, 15 S. W. 554; Williams v. Railroad, 119 Mo. 316, 322, 24 S. W. 782; Burns v. Railroad, 129 Mo. 41, 52, 31 S. W. 347; Wendell v. Railroad, 100 Mo. App. 566, 75 S. W. 689.]

In Bowen v. Railroad, supra, the facts were analogous to those in the case at bar. In that case a bridge went down under the weight of a construction train and the plaintiff, who was injured, recovered judgment below for damages. This judgment was affirmed by the Su-

preme Court; but, as in all other cases where there was a dispute about the matter, it was left to the jury to say whether the railroad company knew of the defect in its roadway which caused the injury, or by proper inspection might have ascertained it. In stating the rule of law, the opinion said it had been held again and again that, as between master and servant, the former was not required to furnish absolutely safe appliances; but the rule was that he must use reasonable and ordinary care and foresight in furnishing appliances and in keeping them in good repair; and that this was the extent of his duty to an employee. Statements in judicial opinions that a master is bound to furnish safe appliances to his servants, are to be understood as meaning the duty exists to the extent that, by reasonable diligence, it can be performed. In the present case that qualification of the rule was lost sight of, and the effect of the rulings on the instructions was to lay the defendant absolutely liable for the death of the deceased in consequence of an imperfection in its track, whether it knew of the fault, or by careful inspection could have known of it. Therefore a radical error ran through the trial of the case.

Complaint is made of the court's refusal to exclude a certain voluntary statement by one of the witnesses. This statement should have been excluded and may be on another trial.

The judgment is reversed and the cause remanded. All concur.