BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1913

---

## PETER HAAS, Respondent, v. AMERICAN CAR & FOUNDRY COMPANY, Appellant.

St. Louis Court of Appeals, February 4, 1913.   Judgment Modified June 17, 1913.

1. **MASTER AND SERVANT: Injury to Servant: Defective Appliances: Sufficiency of Evidence: Instructions.** In an action by an employee for injuries received through being struck by a board which was thrown back by a circular saw, *held* that the evidence did not tend to prove that the saw, or the table to which it was fitted, was old, defective, loose or out of repair, or that the saw ran unevenly; and hence it is *held* that an instruction, authorizing a recovery if the jury found that these conditions obtained, was erroneous, because not sustained by the evidence.

2. **INSTRUCTIONS: Not Based on Evidence.** An instruction which permits a recovery on a finding of the existence of facts that the evidence does not tend to prove, is erroneous.

(314)               [176 Mo. App.

3. **MASTER AND SERVANT: Duty of Master: Instructions.** An employer is not an insurer of the safety of his employees, and need only exercise ordinary care to provide a reasonably safe place for them to work, considering the character of the work; and hence, in an action for injuries sustained by an employee, an instruction which permits a recovery, if the jury find that the employer did not provide a safe place for the employee to work, is erroneous.

4. ————: **Injury to Servant: Defective Appliances: Instructions.** Where, in an action for injuries to an employee who was struck by a board thrown back by a circular saw, the evidence showed that all employees working at the saw knew that the boards, if not held in place by the operator, were liable to be thrown back and that the table was adjusted according to the work done, so that, with the saw moving rapidly against a board on the movable table, there would be more or less wobbling, an instruction that if the jury found that "near said saw, when in operation, was not a safe place for employees to work," and that the employer knew, or by the exercise of ordinary care might have known, that the saw and table were out of repair, would throw out boards, and were dangerous to employees working near them, the employee could recover, was erroneous for using the word "safe" without qualification, thereby throwing on the employer the duty of providing an absolutely safe place for the employee to work.

5. ————: ————: **Assumption of Risk.** Where the manner in which an employer's work is being conducted and the risks of injury therefrom are known to all the employees, the employer is not liable to an employee who was injured while doing his work in such manner, on the theory that he was negligent in failing to adopt some other way of doing the work.

6. ————: ————: **Two of More Possible Causes Shown: Certainty Required.** Where an injury to an employee might have resulted from more than one cause, for only one of which the master is liable, the employee, to recover, must prove that the injury arose from that cause.

7. ————: ————: **Negligence of Fellow-Servant.** Where the injury to an employee, struck by a board thrown back from a circular saw, was caused by the negligence of a coemployee, operating the saw, in failing to properly control the board, the employer was not liable, for the reason that the employees were fellow-servants.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin-Allen, Judge.*

REVERSED AND REMANDED.

*Watts, Gentry & Lee* for appellant.

(1) The demurrer to the evidence should have been sustained. The injury to plaintiff may have resulted from mere accident or from the negligence of a fellow-servant. Plaintiff failed to make out a case because his evidence fails to show the injury resulted from a cause for which the master was responsible. Goransson v. Mfg. Co., 186 Mo. 307. (2) Instruction No. 1, given at plaintiff's request, was erroneous, because submitting to the jury the finding of issues of fact unsupported by any evidence, because instructing the jury in effect that it was defendant's duty to maintain an absolutely safe and proper machine. Ordinary care to furnish a reasonably safe place or appliance is all the law requires of the master. Hach v. Railroad, 117 Mo. App. 11; Glasscock v. Dry Goods Co., 96 Mo. App. 657.

*Ernest C. Dodge* for respondent.

(1) The duty devolving upon the master to furnish a safe place to work for his servants in the first instance is one which cannot be relegated so as to relieve a master from liability. 26 Cyc. 1322. (2) The instruction given was correct. Cole v. Transit Co., 183 Mo. 81; Deweese v. Iron Co., 128 Mo. 423, 54 App. 476. (3) A demurrer admits every fact to be true which the evidence tends to prove whether by direct testimony or by reasonable deductions to be drawn therefrom. Von Trebra v. Gas Co., 209 Mo. 648.

REYNOLDS, P. J.—By the amended petition in this case upon which it was tried, it is averred in substance that plaintiff was in the employ of defendant as a carpenter; that defendant was negligent in the operation of its plant and the machines and machinery

therein, especially in the operation of a circular saw, in this, that the "saw and table in which it was fitted, were old, defective and worn loose and out of repair, and said saw ran unevenly and 'wobbled' and was not a safe or proper appliance or machine for employees to use, and was not a safe place for employees to work near or about, all of which was well known to the defendant, or could have been ascertained by the exercise of ordinary care; . . . that said saw in its defective and worn condition would 'kick' or throw back loose boards when being operated, which were liable to injure employees, all of which was well known to the defendant or could have been ascertained by the exercise of ordinary care." That plaintiff on the third day of September, 1909, while exercising ordinary care for his own safety, was carrying on his ordinary work near the saw and unconscious of any danger, and that "by reason of the negligence of defendant in not providing a safe place in which to work," a loose board was kicked or thrown backwards by the action of the defective saw against plaintiff's right side, fracturing three ribs and puncturing and rupturing his liver and otherwise injuring him, rendering him a cripple for his natural life. Damages in the sum of $2000 are claimed.

The answer was a general denial.

At a trial before a court and jury there was a verdict for plaintiff in the sum of $1000. Judgment followed from which defendant has duly perfected appeal to this court, having filed its motion for a new trial and saving exceptions to that being overruled.

It appears from the evidence in the case that plaintiff was a native of Greece and was obliged to testify through an interpreter as was also the case with practically all of his witnesses.

Plaintiff testified that he was twenty-seven years old; had been in St. Louis since 1905; was a carpenter by trade and had been working as such since he was

fifteen years old; went to work for defendant in 1905, working for him three years and eight months; then laid off; went back again to work at the same place and had been working there about two and a half or three months, engaged in carpenter work, making the sides of cars which defendant was building. The large boards used in the construction of the cars were brought to the workmen on the track upon which the cars under construction were placed; the carpenters going to the room in the works where a saw was being operated for cutting the smaller boards, which they themselves cut into proper sizes. Just as plaintiff entered, the door of this room on the day of the accident, whether to get a board already cut or to cut one himself is not clear, he was struck and received the injuries alleged. They were undoubtedly very serious, in all probability, permanent. This is practically all that plaintiff himself knows of the accident, as it appears from the testimony of others that he was unconscious for quite a while after it occurred, not recovering consciousness until after he was taken to a hospital and operated upon. Plaintiff further testified, however, that he had previously gone into this room where this saw was to cut boards twice in one hour of that day. This last time when he entered he was struck as soon as he entered and fell down; had always been going into this room to get these pieces of board as they were cut. Plaintiff further testified as to his condition prior to and subsequent to the accident, and as to what he had previously earned and that he is no longer able to work at his trade of a carpenter. As no complaint is made of the verdict as to its amount, it is unnecessary to touch further upon this part of the case.

One of the witnesses for plaintiff, also a carpenter in the employ of defendant, but who was not present at the time plaintiff was hurt, testified that he had been engaged in the same kind of carpenter work

as had plaintiff; was cutting and carrying boards from this saw room to the car on which he was working; had sawed boards with this saw himself; had gone twice the day of this accident to get some boards which had been cut but did not notice the saw in operation. Sometimes it would be in operation, sometimes stopped; could not tell how many times he had seen it in operation that week. The workmen were going in and out of the room in which this saw was operated every day several times a day, as they needed pieces for their work. Witness had operated this saw himself several times before the accident; it was in the same condition on the day plaintiff was injured as on the day before; had noticed it on that day and it ran the same as always; whenever you put a board in, it was "wobbling" all the time. From the time he had been at work at the foundry he had seen this saw in operation from time to time. The saw was working as usual on the day of the accident.

On cross-examination he testified that there was no one in particular in charge of the saw who stayed with it all the time; when a carpenter wanted lumber sawed he would go there, take the lever and adjust the saw himself and saw the board. When witness went there to saw lumber he adjusted the saw himself to saw the particular piece that he came to saw and would turn on the power himself, the saw being operated by means of electricity. The saw was provided there for the use of the carpenters whenever they had need of it. "There was no fault with the saw itself. It was a metal saw. It cut the timber all right. There was a gauge on one side of the saw. That regulated whether it would be wider or narrower. It was for the purpose of regulating the strips you saw off of the lumber. It can be put up close to the slot or away from the slot according to the width of the strip that you wish to saw off. The carpenter regulates that. Nobody had anything to do with that except the carpenter who

wanted to saw a strip off.'' This witness further testified that by ''wobbling'' he meant that the saw ''wobbled'' because there was no guard to stop the saw from ''wobbling.''. The saw did not have a guard; it came up in the board table, the top of the saw leading through a slot, which is just enough for the thickness of the saw to go through it as it revolves. The top or edge of the saw projects above the top of the table. It is this top which is raised or lowered. The saw itself is not raised or lowered, being fixed to the axle of the shaft. The carpenter who uses it raises or lowers the top of the table as far as he wants it, according to the thickness of the lumber. If you want to make the saw lower for a thinner board, you raise the top of the table higher. It is a movable table and the carpenter adjusted that for himself. The saw has to run evenly in this slot to keep it from going out the sides of the slot. It revolves at a very high rate of speed, so high that when you hold the board against it it shakes in your hand. The carpenter who is sawing pushes the board up against the saw with his hands.

Another witness testified that he was employed in the shops of defendant and was present when plaintiff was hurt. He had gone in with his own piece of board to saw it, and another man, an American, came in with a piece which he wanted to saw. The witness gave way to him so that the American could get through with his work first, the witness waiting there until the American workman should get through. The witness stayed right behind this workman and to one side of him. Plaintiff was coming from the outside. As soon as he entered the door the board struck him and hurt him—shot into him as quickly as if fired from a gun; it came from the table where the saw was being operated. There was a big power on the saw that kicked the board backwards and struck respondent and he fell down. This saw was running exactly like the other saws, running in the usual way as other ma-

chines there. On the morning of the accident it was in
place just as all the other saws except that on this one
they could raise the boards, the surface of the table,
up or down the way they wanted it when they wanted
to saw a piece. This table is on top of a stand and in
the center is the saw. While he was sawing the table
was ''wobbling.''

On cross-examination witness stated that all the
other saws he had used of the kind like the one in ques-
tion didn't cause a vibration or ''wobbling''. of the
table; that when there is a very big power on it ''wob-
bles'' the table. Any saw that runs with big power
shakes the table but doesn't kick the board backward.
The board that struck plaintiff was split in two pieces,
one piece went backward; it had just got the finish of
the saw when it kicked backward. The outside strip
was the one that did this, the other side remaining in
place. Witness saw the piece that struck plaintiff be-
fore it left the saw. The man who was operating was
holding the piece, that is, was pushing from the inside
of the saw. He could not put his hand on the other
side, so that was left loose. Any board that is fed
into one of these saws, the saw revolving at a high
rate of speed, would be kicked back on all the saws if
somebody did not hold it; they had some other saws on
the platform that never kicked backward. In operat-
ing the saw in question the man who puts the board in
must push it along; if he doesn't push it along and
hold it tight with his hands it will kick back at him—
shoot back like a gun. In every instance in using this
saw for sawing a board, witness testified that he held
the board tight as he fed it into the saw to keep it
from being kicked back by the force of the saw. When
the board was sawed through and the saw had finished
its work, one piece would be thrown to one side and
the one that was needed for use would be taken out by
the man who had sawed it. Other men carry away the

useless pieces. In the present instance the American had just finished sawing the piece he had in and as soon as it was finished "the saw grabbed the board backwards."

Another witness for plaintiff testified that he was also working as a carpenter for appellant; had been working for it about three years; was working there on the day of the accident; knew the saw; had operated it many times but had not operated it on the day of the accident although he had operated it almost every day. The table in which the saw operated was about four feet long and the saw came up through a slot in about the middle of the table which had a board on top of it and that was movable; you have to move that board backward and forward according to the width you want to get. When you put boards on the table it trembled. When it was in operation the saw and the board and the table trembled and when the board trembled it kicked back.

On cross-examination witness testified that to keep it from kicking back the man operating had to catch the boards strong; if you leave them run loose they kick back; if you leave the board alone on top of the table it would come back as soon as the saw struck it; had seen two men working at the table but when he had worked it, had done it alone. The workmen did not have to go and get permission from any officer or superintendent of defendant to use the saw; the men used it themselves whenever they had need of it; when they wanted to use it they would start the power by taking hold of the handle, turning on the electricity and gauging the board into the saw. When operating the saw on a board a man's hands trembled; the faster the saw moves the more tremble there is; when the saw goes at a high rate of speed you have to hold the board more firmly to keep it from coming back. Witness knew of other saws at work in this shop that did not tremble although run very fast but they were not the

same kind as this one, which was a ripsaw. When a carpenter wishes to saw a piece he measures to get the piece sawed off the exact width that he wants. There is a strip on the table which is movable, moving in or out, according to the width of the thickness of the strip that is sawed. The hole or slot in the table through which the saw runs is twelve or fifteen inches long and about an inch or an inch and a quarter wide.

Another witness for plaintiff, also a carpenter in the employ of defendant but not present when the accident happened, testified that he had operated this saw many times; had sawed on it every day both before and after the accident to the respondent; saw it on the day of the accident. The saw seemed to the witness like any other saw on a table and when he put the board into it, it was trembling on account of the amount of power turned on. When one wanted to saw a piece of lumber he had to raise up the table to the required height, and as soon as he put the piece of board against the saw, had to push it hard so as to saw; that was the cause of the trembling in the table. When he put the board in and against the saw it was trembling so hard that he had to push it in with his hands; many times it was trying to kick back but he kept pushing it so that the saw would go clear through. The reason for this trembling, this witness said, was the great power that was on and because the top of the table was loose; that was the cause of the trembling of the board. It made the board tremble because when the table moves and trembles the board is also going back, and when it is, the saw catches it and throws it backward.

On cross-examination witness testified that he had never seen the teeth of this saw catch in the slot. The saw has to revolve pretty straight to keep it from coming in contact with the edges of the slot; it goes straight; it revolves straight so far as being straight on the axle is concerned. The trembling that he re-

ferred to is caused by the high power that revolves the saw. At any time if you leave your hands off of the piece and do not hold it tight the saw will pitch it back and if you leave a piece lay there and let it get away on the table and get in the way of the saw as soon as the saw strikes it, it will throw it back.

This was practically all the testimony introduced on behalf of plaintiff. At the close of it counsel for defendant asked the court to instruct the jury that under the pleadings and evidence in the case, plaintiff is not entitled to recover. The court refused to give this instruction, whereupon counsel for defendant announced that they would stand on the demurrer and would introduce no evidence.

At the instance of plaintiff the court instructed the jury, in substance, that if they found from the evidence that at the time of the injury plaintiff was in the employ of defendant and was engaged in his usual occupation of carrying boards from one part of the room to another and necessarily passing near a circular saw, and if the jury find and believe from the evidence that the "table in which the saw was set was worn loose and out of repair, that the said table 'wobbled' and was not a safe or proper appliance or machine for employees to use, and that these facts, if you find them to be facts, were the direct cause of the injuries to the plaintiff, and if you further find from the evidence that near said saw when being operated was not a safe place for employees to work, and that defendant by its agents and servants knew, or by the exercise of ordinary care might have known, that said saw and table was out of repair and that it would kick or throw out boards when being operated, and was dangerous to employees, working near it, and if you further find and believe from the evidence that plaintiff was in the exercise of ordinary care for his own safety such as an ordinarily prudent man of his age and experience would exercise about his own affairs,

and if you believe and find from the evidence that a loose board at the time was kicked or thrown backward by the action of the saw and table and punctured his liver, and rendered him a cripple for life, you will find a verdict for plaintiff.''

Other instructions, one as to the measure of damages, another to the effect that the burthen of proof is on plaintiff, and defining what was meant by the burthen of proof, and another as to the number of jurors necessary to find a verdict, were given. No error is assigned on any of these latter instructions.

The only errors here assigned are to the refusal of the demurrer interposed by defendant to the evidence and to error in the principal instruction given.

Taking up these assignments in inverse order we hold that the principal instruction given at the instance of plaintiff and which we have set out in substance should not have been given. It will be observed that the gravamen of the charge is that appellant had provided an unsafe place in which respondent was required to work, in that at that place there was a saw being operated and that the saw and the table to which it was fitted were old, defective, worn loose and out of repair, the saw running unevenly and ''wobbling'' so that it would kick or throw back loose boards when being operated, these loose boards apt to injure appellant's employees. This instruction tells the jury that if they find that this saw and table to which it was fitted were old, defective, worn loose and out of repair, the saw running unevenly and ''wobbling'' so that it would kick, then plaintiff is entitled to recover, other things also being found to exist. There is no testimony whatever in the case that the saw or the table were old, defective, worn loose or out of repair or that the saw was running unevenly. The evidence shows that this saw was set up and had been running not to exceed two and a half years, if that long, so that it cannot be called old. Nor is there any evidence that,

as set up, the machinery was defective, or that the saw had worn loose and was out of repair or was running unevenly. It is true that the witnesses testified that the saw "wobbled," but when that evidence is examined in connection with the other evidence in the case and in the light of the character of this machine, it is very clear that it is not the saw which was "wobbling" but the top of the table which "wobbled" when boards were being sawed. This top of the table was adjustable so that it could be raised or lowered according to the thickness of the board through which the saw was to cut, and necessarily it was loose; but there is no evidence whatever to show that the saw was loose on its axle or that it "wobbled" out of a true line. To the contrary, the evidence is positive and uncontradicted that the saw ran true and straight through the slot in the top of the table which would not be possible if it "wobbled." Nor is there any evidence in the case to show that the saw as set up and operated was not a safe or proper appliance or machine for the employees to use, or that the place was not a safe place for employees to work near or about, for the evidence is that the employees, carpenters who desired to use the saw for cutting boards with which they were working, had been using it for two years or more, and respondent himself and other employees had used it the very day of the accident and had used it for several days before, and, so far as the evidence in the case shows, without any accident. Nor is there any evidence bringing home to the employer or its representatives any knowledge that the machinery when properly operated was dangerous.

This instruction is further defective in that it told the jury that if they further found from the evidence "that near said saw when being operated was not a safe place for employees to work," etc., plaintiff was entitled to recover. It is not the law that the employer is bound to provide a "safe" place for em-

ployees to work. He is not an insurer of the safety of his employees. All that is required of him is the exercise of ordinary care in providing a reasonably safe place for his employees to work, considering the character of the work in which the employee is engaged.

In Bradley v. Chicago, Milwaukee & St. Paul R. Co., 138 Mo. 293, 39 S. W. 763, Judge MACFARLANE, speaking of the assumption of risk by the employee and of the ordinary perils of service, says (l. c. 302): "Two well-settled principles of law bear upon this question. It is well-established law that the master impliedly agrees with his servant, when he employs him to perform any work or service, to use reasonable care to provide him with suitable means, appliances and instrumentalities, to do his work as safely as the necessary hazards of the employment will permit. This duty includes that of care to provide as safe a place to perform the service as the character of the work to be done will permit." Judge MACFARLANE then quotes from the opinion of Mr. Justice GRAY in Armour v. Hahn, 111 U. S. 318, that "the obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as toward them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellows." Judge MACFARLANE further holds that it is equally well settled that the master can conduct his business in his own way and the servant, knowing the hazards of his employment as the business is conducted, impliedly waives the right of compensation for injuries resulting from causes incident thereto, though a different method of conducting the business would have been less dangerous.

Granting that the testimony in this case shows that when this saw was being run through the boards, if they were not held in place by the operator they

were liable to kick back, the evidence conclusively shows this was a fact that was known to all the employees working at the saw and presumably known to the respondent himself. It is a very natural supposition also that if boards are set up against a rapidly moving ripsaw, as this is testified to have been, unless the operator guards them in some way while the saw is running through, the instant the teeth of the saw strike against the board and while the board is being run through, it is bound to kick back. That is what appears to have been the fact here. Added to this is the further fact that the top of this table was not stationary but adjustable, raised or lowered according to the work being done. So that with the saw moving rapidly against a board on this movable table top, beyond all question there would be more or less "wobbling," trembling, shaking, on this movable top. Whether the way in which this saw was operated was the safest and best, beyond all question it was the way which was in use and apparently known to all the employees. It cannot therefore be said that the employer was liable for not having adopted some other way of operating this machinery, or that respondent was ignorant of the conditions.

The use of the word "safe," as used in this instruction, without any qualification or definition, was, in effect, to throw upon the employer the duty of providing an absolutely safe place in which to work; practically to guarantee or insure his employees that no accident could possibly happen to them when working about this machinery. Hence this instruction was fatally defective in this respect. In line with what is said by the Supreme Court in the Bradley case, see also Glasscock v. Swafford Bros. Dry Goods Co., 106 Mo. App. 657, 80 S. W. 364, and Hach v. St. Louis, I. Mt. & S. R. Co., 117 Mo. App. 11, 93 S. W. 825. See also 26 Cyc. par. 2, p. 1106.

In Hach v. Railroad, supra, Judge GOODE, who delivered the opinion of this court, sums up the authorities as holding that a railroad company is bound-to use great care to keep its roadway safe for the use of its passengers ''and to use ordinary care to keep it safe for the use of employees.'' The same rule announced in the Bradley case and in the Hach and Glasscock cases, supra, is repeated by our Supreme Court in Goransson v. Riter-Conley Mfg. Co., 186 Mo. 300, 1. c. 306, 85 S. W. 338, where Judge MARSHALL, who delivered the opinion, says: ''It is the duty of a master to furnish his servant a reasonably safe place and reasonably safe tools and appliances in which and with which to do his work. A failure to do so constitutes actionable negligence.''

Referring to the second assignment of error, that the demurrer to the evidence should have been sustained, we think that assignment well taken. In the Goransson case, supra, at page 307, Judge MARSHALL speaking for the court states the rule to be, ''that if the accident might have resulted from more than one cause, for one of which the master is liable and for the other he is not liable, it is necessary for the plaintiff to prove, in the first instance, that the injury arose from the cause for which the master is liable, for it is not the province of a court or jury to speculate or guess from which cause the accident happened.''

In the case at bar the evidence of all the witnesses for respondent is to the effect that when the man operating the saw and running a board through, kept his hand on the board and followed it through with pressure sufficient to hold it down to the top of the table, the ''back kick'' did not occur. If this accident happened through the negligence of the man operating the saw in failing to control the board, that man being a fellow-servant of respondent, the master is not liable and respondent cannot recover. In this situation we are compelled to hold that serious as are the injuries

which respondent here has sustained, he cannot recover for any of the causes set out in his petition or established by proof in the case.

The judgment of the circuit court in this cause must be and is reversed. *Nortoni* and *Allen, JJ.,* concur.

## ON MOTION TO MODIFY.

REYNOLDS, P. J.—A motion to modify the judgment has been filed in this case and considered. A majority of the judges so holding, the motion is sustained and the judgment of this court is modified so as to reverse the judgment of the trial court and remand the cause; *Nortoni* and *Allen, JJ.,* concurring, and *Reynolds, P. J.,* dissenting from so much of the order as remands the cause, he holding that on the facts and the law, as set out in the opinion, there is no ground for remanding the cause.