THOMAS E. PERRY, Respondent, v. NORTHWEST-
ERN COAL & MINING COMPANY, Appellant.

**Kansas City Court of Appeals, April 5, 1915.**

1. **NEGLIGENCE: Mines and Mining: Air.** The plaintiff, a
   miner, employed by defendant, was overcome and injured by
   bad air which had accumulated because no opening was cut
   between two of the defendant's mining rooms and sues to recover
   damages for such injuries. The plaintiff and his two sons had
   mined a space about sixty feet long and twenty-five feet wide,
   but neglected to cut an opening between that room and the
   next, which they were required to do every fifty feet, so that
   there would be a circulation of air. *Held*, that plaintiff, having
   alleged that the neglect and failure of defendant to put an
   opening into the partition wall between the two rooms was the
   cause of his injury, cannot recover on some other act of
   omission.

2. ———: **Pleading and Proof.** Where a petition specifies a
   particular act or acts as the cause of the injury the plaintiff
   must recover, if at all, upon proof of such act or acts.

3. **MINES AND MINING: Statute.** Under Sec. 8445, R. S. 1909,
   relating to mines and mining, the positive duty is imposed upon
   the master to provide a good and sufficient amount of ventila-
   tion, but this does not imply that he must perform the task of
   maintaining a safe place for his servant with his own hands, or
   that he is forbidden to require a servant to keep his own place in
   order, the task being within the scope of the servant's skill
   and experience.

Appeal from Macon Circuit Court.—*Hon. Nat. M.
Shelton*, Judge.

REVERSED AND REMANDED.

*Guthrie & Franklin* for appellant.

*C. F. Hale* and *Lacy & Shelton* for respondent.

JOHNSON, J.—Plaintiff, a coal miner employed
by defendant in its mine "number 8" in Macon county,

was overcome and injured by "bad air" which had accumulated at his working place in the mine and sued to recover damages on the ground that his injury was caused by defendant's negligent failure to provide sufficient ventilation. There were horizontal entries, or roadways, in the mine connected with the shaft and plaintiff and his two sons had been working for two months in a room or cross-entry described as the "second east entry off of the eleventh south entry." This room (which had been excavated entirely by plaintiff and his sons) had reached the dimensions of fifty-five or sixty feet in length and about twenty-five feet in width. Its door was about seven feet wide and it is conceded that as it was extended backward it became necessary at intervals of fifty feet to dig an opening in the wall between that room and the one adjoining which was known as the "first entry off of the eleventh south entry," in order that air might circulate through the second entry. No such opening had been made in the wall at the end of the first fifty feet and the negligence alleged in the petition is that "the duty of the defendant was to place a door at said point in said eleventh south entry to split the air and force a current through the said second east entry and ventilate said last-mentioned entry; that the defendant knew that said second east entry was not ventilated and that no air was being forced into the same, or could have known the same by the use of ordinary care, but that the defendant negligently and carelessly failed to construct a door at the place between the said first and second east entries to split said air and furnish air to the said second east entry, and negligently and carelessly directed and permitted the plaintiff to work in said working place on said second east entry, and negligently and carelessly failed to inspect and warn the plaintiff of the dangerous condition of said working place and that the defendant negligently and carelessly failed to provide for and maintain a good and sufficient amount of

ventilation for the plaintiff at the working place of
the plaintiff at the time plaintiff was injured as afore-
said, but carelessly and negligently failed to provide
for and maintain any ventilation for plaintiff at said
time and place.''

The answer is a general denial and a plea of con-
tributory negligence. A trial of the issues resulted in
a verdict and judgment for plaintiff and defendant ap-
pealed.

Plaintiff was injured early in the morning shortly
after beginning work. He carried a carbide lamp which
failed to indicate the presence of the poisonous gas.
He had gone to the end of the room when his throat
began to hurt and being warned thereby that the air
was poisonous, he proceeded to leave the room, but,
before he could reach a place of safety, was overcome.
In his direct examination he attributes the lack of
proper ventilation to the cause alleged in the petition.
The main air current, he states, came in the twelfth and
out of the eleventh south entries which were main en-
tries. ''The air should come in the second east (his
room) first and out of the first east . . . and in
order to do this there should have been a door con-
structed between the two rooms . . . and that
would cause the air to stop and go up the second east
(room) . . . and then go through the cross-cut
and then out.''

On cross-examination he is not so certain that the
opening, if made, would have drained his room of pois-
onous gas. He admits that he and his sons were the
only miners who had a right under the contracts of the
miners with defendant, to work in the second room east
or to break an opening in the wall between that room
and the first room east, and that it was one of the duties
of his service to make the openings at intervals of fifty
feet. He says ''As yet I had not done it. I was pre-
paring to do it and I knew I hadn't made the break
there. I knew it had to be made . . . this room

number one was next the eleventh south down there where the main current of air came down and, consequently, the fresh air would rush into that room before it could get out to me. I don't say that if I had made the break into that room fresh air would have come into my room. Air does not have to come from number one into my room after I get back fifty or sixty feet . . . Yes, sir, it is my duty after I drive a room to do that (make a break) and give myself air. That is what we made them for and it is my duty as I drive my room back to make them."

It seems to be conceded that the ventilation in that part of the mine had not been good for several days before the injury. One of plaintiff's sons testified he told the mine foreman that the air was not good and that he thought "we needed air in there" but did not remember what answer the foreman returned. The latter, introduced as a witness by defendant, testified that he told the young man "to put in a cross-cut, a break between the rooms to give ventilation to the mine." This testimony is not contradicted and we think the evidence discloses two facts with reference to the opening which should have been made between the two walls, viz: First, that it was one of the duties of plaintiff and his sons to make that opening without a special order from defendant, and, second, they were specially ordered by the foreman to perform that task and negligently failed to obey the order.

The case of plaintiff, as presented by his pleadings and evidence, therefore, is reduced to this singular proposition: He was injured by his own negligence and disobedience in failing to make an opening for ventilation and yet claims that he should be allowed to recover damages from his employer whose general rule and express order he disobeyed, because, as his counsel contend and the trial court held, the statutes relating to mines and mining (Sec. 8445, R. S. 1909) imposed the positive duty upon defendant "to provide a good

and sufficient amount of ventilation" in the room in which plaintiff and his sons were working and that defendant could not delegate the performance of that duty to plaintiff and his sons.

As is well said in White on Personal Injuries in Mines (Sec. 328) the breach of a duty imposed by statute generally constitutes negligence *per se*. The statute in question does not place upon the operator of a mine the duty of an insurer but does impose upon him the positive duty to exercise reasonable care to provide "a good and sufficient amount of ventilation." A breach of that duty is negligence *per se* and the operator cannot delegate its performance to another and thereby shift responsibility for its nonperformance from his own shoulders. No master charged with the performance of the common-law duty to exercise reasonable care to furnish his servant a reasonably safe place in which to work or with reasonably safe tools and appliances is allowed to escape responsibility by delegating the performance of such duty to another. There is no difference in this respect between the common-law duty and the statutory duty in question. The responsibility of the master cannot be shifted in either case. But this rule does not imply that the master must perform the task of maintaining a safe place for his servant with his own hands, or that he is forbidden to require a servant to keep his own place in order, though the task be within the scope of the servant's skill and experience.

It is not an attempted delegation of duty but is a step in the performance thereof when the master, in the exercise of "his legal right to direct his servant to do any and all things that are embraced within the scope of the general employment" (Modlagl v. Foundry Co., 248 Mo. 587), "directs his servant to do that which when done will make safe the place of the servant's employment. In the case cited the Supreme Court held it would be nonsense to say that a master

in the performance of the duty under consideration would be required to hire one blacksmith to keep the tools of another in repair when both would be engaged in precisely the same work, and in the opinion attention was called to cases in this State where it was held proper for a mine operator to require a miner to inspect his own drill holes. [Knorpp v. Wagner, 195 Mo. 637; Livengood v. Lead & Zinc Co., 179 Mo. 229; Fisher v. Central Lead Co., 156 Mo. 479.]

Digging coal from a partition wall to make an aperture therein was no different from digging coal in any other part of the room and in ordering plaintiff to do that work which, incidently, was for the security of plaintiff, defendant was not delegating a duty but was requiring a service it had a right to demand of its servant.

On his own presentation of the case plaintiff's injury was caused, not by any negligence of defendant but by his own admitted negligence and proved disobedience and the court erred in not peremptorily directing a verdict for defendant.

It was brought out in the evidence that the air was bad in the vicinity of plaintiff's room, though not so poisonous outside as inside the room. The mine foreman conceded that this was so and it appears from his testimony that the absence of an opening between the two rooms was not the cause of the accumulation of poisonous gas in room number two. He states the cause of the bad air in that section of the mine was discovered by him to be a "short circuit" in the main air current, produced by the enlargement of a ventilating door or hole at a point between the affected section of the mine and the source of the air supply. Some miners had negligently enlarged that opening into a passageway for their use, and the effect was to decrease the volume of air which, otherwise, would have passed on into the more remote sections of the mine. Counsel for plaintiff, in their brief and argument, seem to aban-

don the specification of negligence in the petition which, as stated, was the omission of defendant to cut a hole in the partition between rooms one and two and contend, in effect, that the judgment should be upheld on the ground that the real cause of the injury was the defective ventilation in that section of the mine. They argue, "no air could have circulated from plaintiff's room into room number one if an opening had been made, for, under all the evidence of the witnesses for both plaintiff and defendant, there was no circulation of air in the entry and in that part of the mine, and the lack of such an opening could not, therefore have affected the ventilation of plaintiff's room in any way whatever. The lack of an opening from plaintiff's room into room number one did not contribute in any way whatever to plaintiff's injuries; there was no air circulation through the entry off of which plaintiff's room and rooms adjacent were turned according to all the evidence and consequently no supply for the rooms of plaintiff and the rooms adjoining his."

The gravamen of the pleaded cause of action is the breach by defendant of its statutory duty "to provide and maintain a good and sufficient amount of ventilation" and under a proper petition it would appear from the evidence that plaintiff might have a cause of action based on negligence of defendant in allowing the short circuit to continue after it should have been discovered and remedied had reasonable care been exercised. But plaintiff cannot avail himself of that act of negligence, if defendant thus was negligent, under the petition which specifies another act as the proximate cause of his injury. The rule is elementary that where the petition specifies a particular act or acts as the cause of the injury the plaintiff must recover, if at all, upon proof of such act or acts. [Strode v. Box. Co., 250 Mo. 695; Haas v. Foundry Co., 176 Mo. App. 314.] Having alleged that the negligent failure of defendant

188MA21

to put an opening in the partition wall between the two rooms was the cause of his injury plaintiff will not be allowed to recover on the ground that it was not such cause but that some other act of omission injured him.

The judgment is reversed and the cause remanded. All concur.